In this action, the defendant, E.J. Turner, appeals from a summary judgment on his counterclaim against the plaintiff, Deutz-Allis Credit Corporation (hereinafter referred *Page 841 
to as "Deutz"). Turner's counterclaim dealt with a model 7020 tractor manufactured by Allis-Chalmers (hereinafter referred to as "A-C").[1] Deutz brought suit against Turner in detinue and for breach of contract, each claim centering on a combine and its attachments. At trial the court granted Deutz-Allis's motion for summary judgment on Turner's counterclaim and certified the action as final under Rule 54(b), A.R.Civ.P. On appeal, Turner argues that the trial court erred in granting summary judgment against him, because, he says, an issue of material fact existed as to his claims of fraud, misrepresentation, and conspiracy to defraud, and as to whether the statute of limitations had expired on his fraud and misrepresentation claims. Furthermore, he contends that the trial court erred in finding that there was no breach of an agreement to insure. We reverse and remand.
The relevant facts of this appeal are as follows:
On August 17, 1979, Meadows Equipment Company, Inc. (hereinafter "Meadows Equipment"), a retail dealer in farm equipment, contracted to sell E.J. Turner an A-Ccombine with attachments, through its president, N.J. Meadows. Turner's indebtedness under this sales contract was scheduled for retirement by the terms of an A-C Credit Corporation contract. Thereafter, Turner entered into five extension or refinancing agreements with the credit corporation. At the time suit was commenced in the trial court, the principal due under the contract had been reduced from $42,730.00 to $16,932.06.
Unrelated to the Turner contract, on December 1, 1980, Meadows Equipment entered into another retail installment contract with Thomas Joe Beaty to sell Beaty an A-C 7020tractor. Subsequently, A-C Credit Corporation authorized Meadows, as president of Meadows Equipment, to negotiate the transfer of Beaty's tractor to Turner. The physical transfer of this equipment occurred on March 18, 1982. Whether this transfer occurred pursuant to a valid transfer of indebtedness agreement is disputed. Under the terms of the Turner contract for the purchase of the combine with its attachments, A-C provided that it would procure property damage insurance. In pertinent part, the agreement expressly provided as follows:
NOTICE OF PROPERTY INSURANCE
 If Allis-Chalmers (A-C) becomes the holder of this retail installment contract, A-C will purchase, at its expense, property damage insurance covering the equipment described on the face of this contract.
In contrast to this agreement, the terms of the Beaty contract for the purchase of the 7020 tractor provided that the purchaser, not A-C, would provide the necessary property damage insurance. The agreement provided that the "[b]uyer shall keep the products insured against all risks of loss or damage for not less than the outstanding (unpaid) balance of the contract."
Without the benefit of physical damage insurance, the tractor burned in December 1983. As a result, a dispute arose between Turner and A-C over who had been responsible for the procurement of property damage insurance on the tractor. Turner claimed that Meadows had represented to him that the tractor would be insured just as the combine had been insured and that anything A-C sold on credit was required to have insurance. Moreover, Turner maintained that he never signed a transfer agreement. This fact was without dispute, because Meadows admitted that the document necessary to bring about the complete and proper transfer of all contractual duties from Beaty to Turner was not executed. However, in response to Meadows's contention that he could not recollect ever having a discussion with Turner about insurance, Meadows maintained that he always assumed that the tractor was insured and that he learned that it was not insured only after the tractor burned. *Page 842 
During the spring of 1984, Turner became delinquent on his payments on the tractor and on the combine. Because of Turner's delinquency, A-C Credit Corporation, through its finance representative, Robert Langford, began negotiations with Turner for payment. During their negotiations, each party alleged that the other party had been responsible for the insurance coverage. Langford presented Turner with a contract providing that Turner would retire the balance on both the tractor and the combine plus attachments, with extended terms at a reduced interest rate. Turner rejected this proposal.
Finally, Langford proposed an extension on the payments for the combine. Turner accepted this proposal. On May 18, 1984, pursuant to their agreement, Turner tendered a check to A-C Credit Corporation to obtain an extension of payments on the combine. Allis-Chalmers Credit Corporation accepted the check, but never negotiated it because it did not approve the extension. Allis-Chalmers Credit Corporation did not return the check, nor did it inform Turner of its rejection of the extension.
This appeal presents three important issues for our review:
1. Under principles of agency, can Deutz-Allis Credit Corporation be held liable on the counterclaim of Turner for any fraud, misrepresentations, or conspiracy to defraud?
2. If so, is Turner's counterclaim nevertheless barred by the applicable statute of limitations?
3. Does Turner have a viable claim against Deutz-Allis Credit Corporation for breach of an oral agreement to insure?
 I.
In reviewing the decision of the court below, we are guided by Rule 56(c), Ala.R.Civ.P. Under this rule we first determine whether any genuine issue of material fact exists. If such an issue does exist, the grant of summary judgment was improper. In the absence of any genuine issue of material fact, we consider whether the law was correctly applied to undisputed facts. Williams v. Prudential Ins. Co., 470 So.2d 1200 (Ala. 1985).
In order to constitute fraud, there must be (1) a misrepresentation (2) of a material fact (3) made willfully to deceive or recklessly without knowledge, that is (4) acted on by the opposite party and (5) justifiable reliance by the complaining party. Code of Ala. 1975, § 6-5-101; see alsoBowman v. McElrath Poultry Co., 468 So.2d 879 (Ala. 1985). After having carefully reviewed the record and the briefs, we observe that material issues of fact exist on elements two through five of Turner's fraud claim. Therefore, our only consideration is whether a principal-agent relationship existed between Meadows Equipment and A-C, the operative effect of which was to impute liability to A-C for the representations Meadows made to Turner.
This Court has addressed the general rules of agency on numerous occasions. It is well documented that "[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." Restatement (Second) of Agency, § 1 (1958); see also, Barrett Mobile Home Transport, Inc. v. McGugin,423 So.2d 1364 (Ala.Civ.App. 1981), reversed on other grounds,423 So.2d 1367 (Ala. 1982), on remand 423 So.2d 1371
(Ala.Civ.App.), writ quashed, 423 So.2d 1375 (Ala. 1982). Recently, inKimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala. 1985), we addressed the issue of whether a finance company was a principal and thus accountable for representations made by a retailer who negotiated finance agreements. In that case, we held that absent other indicia of a principal-agent relationship, a credit corporation was not the principal of an independent retailer of farm equipment, despite the fact that it had the right to prior approval of a credit contract that included its name on the contract and terms of payments that it had dictated. Furthermore, we went on to observe that such practices were consistent with the extension of credit by an institution. Moreover, its approval of the contract and its terms would not legally *Page 843 
amount to a ratification of statements made by the retailer during negotiations by the retailer's employees.
In the instant case, the record indicates that Deutz sells retail finance plans to dealers. The dealer in turn presents those plans to retail customers and, finally, the dealer offers the paper to Deutz for consideration. Clearly, under the applicable principles of agency law, these actions would not create a principal-agent relationship between Deutz and Meadows Equipment. With the transfer of the tractor from Beaty to Turner, however, the line becomes less clear between Meadows Equipment's status as an independent retailer and that of an agent of Deutz. In its brief to the lower court, Deutz argued that Meadows Equipment was not an agent of Deutz. In support of this contention, it maintained that Meadows Equipment never received wages or compensation from Deutz. We are not persuaded by this argument. Under general principles of agency law, compensation is not the controlling factor for the determination of agency. For purposes of this review, the dispositive question is framed in terms of whose benefit Meadows was acting for when he negotiated the transfer of the tractor from Beaty to Turner. We conclude that, in regard to the transfer of the tractor from Beaty to Turner, genuine issues of material fact exist concerning whether Meadows Equipment was an agent of Deutz or an independent retailer of farm equipment. We note that this holding is consistent with the Restatement (Second) of Agency § 14 J (1958). It provides that "[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit." Therefore, the trial court erred in granting summary judgment on Turner's fraud, misrepresentation, and conspiracy claims.
 II.
Turner contends that the statutory provision governing the relation back of counterclaims is applicable, namely, Code of Ala. 1975, § 6-8-84, and, therefore, that his counterclaim was timely; he makes this argument because, he says, the alleged fraud and conspiracy continued until Deutz filed the present action. To this contention, Deutz counters that Turner's counterclaim is time-barred, and in support of this argument Deutz points to Code of Ala. 1975, § 6-2-3 and § 6-2-39, which, prior to January 9, 1985, had a one-year statute of limitations for fraud claims. We do not accept Turner's argument in this regard. Inasmuch as Turner's counterclaim is not time-barred applying the one-year statute of limitations, in the § 6-8-84
context, we pretermit discussion of whether the two-year statute, § 6-2-38, would have been applicable.
Where fraud is alleged, the statutory period of limitations commences to run when the aggrieved party discovers facts that constitute the fraud, Code of Ala. 1975, § 6-2-3. In explaining this provision, we stated in Johnson v. Shenandoah Life Ins.Co., 291 Ala. 389, 281 So.2d 636 (1973), that fraud is deemed discovered when one has notice of "[f]acts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up would have led to a discovery of fraud."
The inquiry for the resolution of the statute of limitations issue is whether Turner's fraud claim was legally subsisting at the time Deutz's right of action accrued. For the same reasons set out in Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala. 1987), and consistent with Code of Ala. 1975, § 6-8-84, we find Turner's fraud claim to be timely.
Section 6-8-84 provides:
 When the defendant pleads a counterclaim to the plaintiff's demand, to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to his counterclaim, where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in the action. *Page 844 
Under this section, a counterclaim is not time-barred if it was a legally subsisting claim at the time the claimant's right of action accrued, even though it would have been untimely as judged from the date that the counterclaim was filed. SharpElectronics. In applying § 6-8-84, to determine the timeliness of Turner's counterclaim, we look first to May 1984, when Deutz's right to bring its claim against Turner accrued. This is when Turner stopped making payments to Deutz. Next, we note that Turner's fraud counterclaim accrued in December 1983, when Turner, as a reasonable person, must have known there was no insurance (because that is when the tractor burned and he was told there was no insurance). Therefore, even applying the one-year statute of limitations, it becomes quite evident that his counterclaim was legally subsisting in May 1984, when Deutz's claim accrued.
 III.
Turner's third argument is that Deutz breached its oral commitment to insure the tractor. This argument turns in part on the construction of Meadows Equipment's status as an agent of Deutz or, alternatively, as an independent retailer for the purpose of the transfer of the tractor (see part I). Second, resolution of this argument turns on whether this Court is willing to uphold an alleged oral contract to insure in the factual context of this case. We have upheld oral contracts of insurance, as well as oral agreements to insure, in a number of cases. Elmer Tallant Agency, Inc. v. Bailey Wood Products,Inc., 374 So.2d 1312 (Ala. 1979); United States Fire Ins. Co.v. Hodges, 275 Ala. 243, 154 So.2d 3 (1963), overruled on other grounds, State Farm Mutual Automobile Insurance Co. v.Auto-Owners Insurance Co., 287 Ala. 477, 252 So.2d 631 (1971). The facts in the foregoing cases are distinguishable from those of the present case in that they involve insurance agents as defendants. This line of cases does, however, recognize the general principle that an action can lie for a breach of an agreement to insure.
Deutz cites Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149,117 So.2d 348 (1960), for the proposition that the parol evidence rule would prohibit the contradiction of a written agreement (the transfer document) by evidence of an oral agreement (the alleged representations made to Turner by Meadows concerning the insurance). We agree with the legal principles of Hartford; however, we find them to be totally inapplicable to the issue at hand. Deutz failed to produce evidence that a written transfer agreement effectuated the transfer of the tractor from Beaty to Turner. While Turner may have later ratified the physical transfer of the tractor by executing an extension agreement regarding payment on the tractor, we conclude that there was no valid transfer document.
We, therefore, conclude that the summary judgment regarding the alleged breach of an agreement to insure the claim was improper. The summary judgment is therefore reversed and the cause is remanded for a trial on Turner's fraud, misrepresentation, conspiracy, and breach-of-agreement-to-insure claims, as well as Deutz-Allis' original claims.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] At the original filing of this claim, the plaintiff was Allis-Chalmers Credit Corporation. In 1985, Deutz purchased Allis-Chalmers. Deutz-Allis Credit Corporation, substituted as plaintiff, is a wholly owned subsidiary of Deutz-Allis Farm Equipment, Inc.