Allan and Joan Butler, husband and wife, appeal from a summary judgment for Aetna Financial Company, doing business as ITT Financial Services ("ITT"), on the Butlers' claims of fraudulent misrepresentation, deceit, fraudulent concealment, wantonness, and outrageous conduct. The Butlers' claims stem from ITT's alleged conduct regarding a consumer credit contract that the Butlers entered when they purchased a television from Rex Radio and Television, Inc. ("Rex").
The record reveals that on October 24, 1988, the Butlers purchased a television from Rex by way of a consumer credit contract. Rex subsequently assigned the contract to ITT. At the time of the purchase, the Butlers completed a credit application. *Page 310 
After the application was approved, Allan Butler executed[1] the contract. The contract provided that the balance owed on the television was to be paid in full within 90 days and that no interest would be charged. The contract indicated that, at the time of purchase, the balance owed on the television was $285.39 and that payment in full of the unpaid balance was required on or before January 24, 1989. The face of the contract also indicated that the contract did not extend financing beyond the due date and that if the debt was not paid in full by the due date, the buyer would be in default.
After the contract was assigned to ITT, the Butlers received from ITT a written confirmation of the transaction. ITT also telephoned to verify that the Butlers had the television. The written confirmation reflected, among other things, the final due date of January 24, 1989, for the $285.39 balance. After receiving the confirmation notice and the telephone call from ITT shortly after the purchase, the Butlers' next contact with ITT occurred when an ITT employee contacted the Butlers on January 30, 1989, which was six days after the contract had gone into default for nonpayment. On that date, an ITT employee telephoned the Butlers and informed them that they were in default on the contract and that the matter needed to be resolved that day. ITT informed the Butlers that if they wished to finance the balance owed on the contract with ITT, the annual interest rate would be 27 percent.
The Butlers testified that salespersons at Rex had informed them when they purchased the television that if they paid the balance owed on the contract within 90 days, no interest charges would be incurred. The Butlers further testified that they were informed by Rex personnel that if they did not pay off the account within 90 days, then ITT would automatically set up payments on the account and send them a payment book without their having to complete any additional forms.
When questioned about what Rex employees had said about the interest rate that ITT would charge if the account was set up on payments at the end of 90 days, Joan Butler testified in her deposition that Allan asked a salesperson, "[W]ell, about what interest rate do they [ITT] charge?" She testified that the salesperson replied, "I'm not sure, but it is somewhere between 10 and 15 percent." When questioned again during the same deposition about exactly what statements the Rex salesperson had made, Joan testified: "I know he said it is between 10 and 15 percent. He might have said 'I think' or 'I'm not sure.' I don't remember his exact wording."
It is undisputed that the Butlers failed to pay the balance owed on the contract by the due date and that they never contacted ITT or another lender about refinancing the account prior to the due date. After ITT contacted the Butlers about the default, Allan checked with at least one other lender about making a loan to pay off the ITT account. He found the other lender's interest rate of 23 or 24 percent to be comparable to the rate quoted to him by ITT. The Butlers refinanced the debt with ITT on January 31, 1989, and then sued Rex and ITT in April 1989.
The primary issue raised in this appeal is whether the Butlers presented substantial evidence as to each of their causes of action so as to make summary judgment for ITT improper. However, before addressing the propriety of the summary judgment for ITT, we must examine the issue whether the salespersons at Rex were acting as agents of ITT when they allegedly related to the Butlers information as to interest rates offered by ITT in the event of the refinancing of the contract.
First, it is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent. National Sec. Fire Cas. Co. v. Bowen,447 So.2d 133 (Ala. 1983). Furthermore, agency is to be determined by the *Page 311 
facts and not by how the parties characterize the relationship.Id.
Here, the Butlers argue that Rex salespersons were acting as agents of ITT when they made the statements that the Butlers say they made concerning the interest rate that would be applicable if the balance owed on the contract was not paid in 90 days and when, according to the Butlers, they represented to them that if the account was not paid off in 90 days the balance would automatically be set up on monthly payments. However, under the evidence that was before the trial court when it entered the summary judgment for ITT, we find nothing to support a finding that an agency relationship existed between Rex and ITT.
In Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94
(Ala. 1985), this Court addressed the issue whether an agency relationship existed under facts quite similar to those of the present case. There, the question was whether an agency relationship existed between a finance company and the seller of a tractor so as to make the finance company liable for the actions of the seller. While the finance company in Kimbrel had a right of approval of the buyer's credit and its name appeared on the contract of sale and it dictated the terms of the buyer's payments, the Court concluded that none of those actions was inconsistent with the extending of credit by an institution. The Court further held that the actions would not legally amount to a ratification of any statements made during negotiations by the employees of the seller of the tractor and that there was nothing in the record that would support a finding of agency.
Likewise, in the present case, we find that the Butlers presented no evidence that would support a finding of an agency relationship between Rex and ITT. The Butlers testified that the Rex salespersons handled the credit transaction, that the salespersons were knowledgeable about interest rates and about the circumstances surrounding a failure to pay off the balance within 90 days, and that the salespersons told them that Rex used ITT for financing all the time. Also, the Butlers presented the deposition of an ITT representative, Rowland Burrell, who confirmed that the financing documents were provided to Rex by ITT. However, just as in Kimbrel, we find none of these actions to be inconsistent with the extending of credit by an institution. Furthermore, there is no other evidence in the record that would support a finding of agency. Therefore, we conclude, based on the evidence before the court on the summary judgment motion, that ITT could not be liable to the Butlers for misrepresentations made to them by Rex personnel.
Addressing now the issue whether summary judgment for ITT was proper on the Butlers' claims of fraudulent misrepresentation, deceit, fraudulent concealment, wantonness, and outrage, we initially note that a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P; Southern Guar. Ins. Co. v. FirstAlabama Bank, 540 So.2d 732 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant.Southern Guar. Ins. Co., supra.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989).
After reviewing the evidence in the record in light of our conclusion that the salespersons at Rex were not agents of ITT, we find that the Butlers failed to *Page 312 
present sufficient evidence to preclude a summary judgment for ITT.
The Butlers addressed their fraudulent misrepresentation, deceit, and fraudulent concealment claims in tandem in their brief, arguing that they had presented substantial evidence as to each claim. However, the evidence presented by the Butlers as to these three causes of action consisted primarily of their testimony as to the conduct of Rex employees and what those employees told the Butlers about financing the purchase of the television. Excluding the evidence of the conduct of Rex employees, we find that the Butlers failed to present sufficient evidence of fraudulent conduct by ITT to defeat ITT's summary judgment motion.
We also find that the Butlers failed to present substantial evidence of outrageous conduct by ITT. In order to establish the tort of outrageous conduct, the law requires substantial evidence of conduct creating emotional distress so extreme that no reasonable person could be expected to endure it.American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980).
In Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38
(Ala. 1990), this Court, while not condoning the secured creditor's threatening, abusive, and insulting language in attempting collections, and its wrongful threats of repossession and sale of the collateral, and its filing of an adverse credit report, held that such tactics do not rise to the level of extreme conduct required to recover damages for the tort of outrage. Here, without cataloging every interaction between ITT and the Butlers, we find that, after viewing the evidence in the record in the light most favorable to the Butlers, as we are required to do, we must conclude that the Butlers failed to present substantial evidence of conduct by ITT that would support a claim based on the tort of outrage.
Finally, we conclude that the Butlers failed to present substantial evidence of wantonness by ITT. "Wantonness" is defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." §6-11-20(b)(3). While the Butlers argue in their brief that the jury should be allowed to consider whether the conduct of ITT, taken as a whole, demonstrates a reckless or conscious disregard for their rights as consumers, they did not present adequate evidence of wantonness to survive a summary judgment motion. In light of the evidence that was presented to the trial court by the Butlers, we find no error by the trial court in granting ITT's motion for summary judgment as to the Butlers' wantonness claim.
Considering the foregoing, we conclude that the summary judgment for ITT is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
[1] Although only Allan executed the contract, the parties do not address the issue of Joan's standing as a plaintiff in this action.