642 So.2d 701 (1994)
Wayne MARDIS and Jacqueline Mardis
v.
FORD MOTOR CREDIT COMPANY.
1921935.
Supreme Court of Alabama.
May 20, 1994.
*702 E. Ray McKee, Jr., Huntsville, for appellants.
S. Dagnal Rowe and G. Bartley Loftin III of Burr & Forman, Huntsville, for appellee.
HOUSTON, Justice.
The plaintiffs, Wayne and Jacqueline Mardis, appeal from a summary judgment for the *703 defendant, Ford Motor Credit Company ("FMCC"), the assignee of a consumer credit contract signed by the Mardises when they purchased an automobile from Cloverleaf Lincoln-Mercury, Inc. ("Cloverleaf"). We affirm.
The evidence, viewed in the light most favorable to the Mardises, indicates that the Mardises purchased a used 1985 automobile from Cloverleaf based on representations from a salesman that the automobile was a 1986 model. The Mardises did not discover until approximately a year and a half later that they had been sold a 1985 model automobile. By the time they made this discovery, the Mardises had driven the automobile over 53,000 miles. The Mardises stopped paying for the automobile shortly after learning of the problem, and FMCC repossessed it. When FMCC thereafter attempted to collect the deficiency owed on the debt after the resale of the automobile, the Mardises sued, seeking to rescind the contract and to recover damages from FMCC under federal law based on allegations of breach of contract and fraud on the part of Cloverleaf. The Mardises also sought to rescind the contract and to recover damages from FMCC under state law based on allegations that Cloverleaf was acting as FMCC's agent when its salesman misrepresented the model year of the automobile and that FMCC should therefore be held responsible for Cloverleaf's actions, under the doctrine of respondeat superior. FMCC counterclaimed, seeking to recover the balance owed on the debt. The trial court entered a summary judgment for FMCC on the Mardises' claims and certified that judgment as final pursuant to Rule 54(b), A.R.Civ.P. FMCC's counterclaim remains pending below.
The Mardises make four contentions to which FMCC takes exception:
1) That language included in the contract pursuant to a Federal Trade Commission ("FTC") regulation, 16 C.F.R. § 433 (1993), gave rise to an affirmative action on their part to rescind the contract and to recover damages from FMCC based on the alleged wrongful actions of Cloverleaf;
2) That they presented sufficient evidence to show that Cloverleaf was FMCC's agent;
3) That they presented sufficient evidence to show that they timely revoked their acceptance of the automobile and rescinded the contract; and
4) That the trial court failed to give them sufficient time to respond to FMCC's summary judgment motion.
With regard to the Mardises' first contention, 16 C.F.R. § 433.2 (1993) ("Preservation of Consumers' Claims and Defenses, Unfair or Deceptive Acts or Practices"), provides that the following statement, which was incorporated into the Mardises' contract, must be included in a consumer credit contract:

"NOTICE
"Any holder of this consumer credit contract [FMCC] is subject to all claims and defenses which the debtor [the Mardises] could assert against the seller [Cloverleaf] of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."
The commentary to this regulation indicates that the FTC did not intend for the consumer to be restricted to defensive theories only. 40 Fed.Reg. 53526-7. The FTC's position with respect to the remedies afforded by the regulation does not, however, support the Mardises' contention that their claims against Cloverleaf may be maintained against FMCC, the assignee/creditor.
"From the consumer's standpoint, this means that a consumer can (1) defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account. The latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified. The most typical example of such a case would involve non-delivery, where delivery *704 was scheduled after the date payments to a creditor commenced."
40 Fed.Reg. 53524. The FTC regulations further state that "[c]onsumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payments and received little or nothing of value from the seller" and that a "total failure of performance" is necessary to entitle a consumer to sue an assignee/creditor for a return of money paid on account." 40 Fed.Reg. 53527.
The undisputed evidence in the present case shows that the Mardises took possession of the automobile in question and drove it over 53,000 miles. Therefore, because the Mardises received an automobile of substantial value from Cloverleaf (although they may not have received the model that they thought they had contracted for), they had no basis under the FTC regulations to sue FMCC for the wrongdoing of Cloverleaf. The Mardises' remedies under the FTC regulations are defensive in nature and should be considered by the trial court in connection with FMCC's counterclaim. Accordingly the summary judgment was proper with respect to the Mardises' federal law claims for rescission and damages based on allegations of wrongdoing by Cloverleaf.
The Mardises' second contention (i.e., that Cloverleaf was acting as FMCC's agent when its salesman misrepresented the model year of the automobile and that FMCC should therefore be held liable under the doctrine of respondeat superior for Cloverleaf's actions) is equally without merit. Although agency is almost always an issue for the trier of fact, "the party asserting it has the burden of adducing sufficient evidence to prove its existence." Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). Once the party moving for a summary judgment has made a prima facie showing that there is no dispute as to the material facts of the case, the burden shifts to the nonmovant to produce "substantial evidence" creating such a dispute. § 12-21-12, Ala.Code 1975; Bean v. Craig, 557 So.2d 1249, 1252 (Ala.1990). The Mardises argue that because FMCC supplied the contract form and could approve or disapprove the credit application filled out by Cloverleaf's salesman, Cloverleaf became FMCC's agent. The Mardises further argue that FMCC's exercise of its rights as a secured creditor under Article 9 of the U.C.C., § 7-9-101 et seq., Ala.Code 1975, was in fact a ratification of Cloverleaf's actions. We disagree with both arguments, and hold that the Mardises failed to meet their burden of showing a genuine issue of material fact.
This Court has held on several occasions that actions similar to those taken by FMCC in this case do not create a principal-agent relationship. In Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala.1985), Kimbrel purchased a tractor from Liberty Truck Sales, financed through the Freightliner Credit Corporation. Like the Mardises, Kimbrel had no contact with any employee or representative of the creditor corporation. Also like the Mardises, Kimbrel alleged that the seller made misrepresentations during the sales transaction. Kimbrel's proof of an agency relationship was essentially similar to that asserted by the Mardises: that Freightliner Credit had a right of approval over Kimbrel's credit, that Freightliner Credit's name appeared on the contract Kimbrel signed with Liberty Truck, and that Freightliner Credit dictated the terms of Kimbrel's payments. This Court stated in that case:
"None of these actions is inconsistent with the extending of credit by an institution, and these actions would not legally amount to a ratification of any statements made during negotiations by Liberty employees. There is no evidence in the record [regarding] the relationship between Liberty and Freightliner [that] would support a finding of agency."
Kimbrel, 476 So.2d at 97.
In Turner v. Deutz-Allis Credit Corp., 544 So.2d 840 (Ala.1988), this Court stated that "the record indicates that Deutz sells retail finance plans to dealers. The dealer in turn presents those plans to retail customers and, finally, the dealer offers the paper to Deutz for consideration. Clearly, under the applicable principles of agency law, these actions would not create a principal-agent relationship between Deutz and [the dealer]." That is exactly the same situation presented in *705 this case, and we reach the same result there is no principal-agent relationship.
We note the Mardises' assertion that Tony Moore, Cloverleaf's owner, admitted in his deposition to being FMCC's agent. However, this Court in Guess v. Snyder, 378 So.2d 691 (Ala.1979), ruled that "[t]he trial court can consider only that material before it at the time of submission of the motion" and that "[a]ny material filed after submission of the motion comes too late." 378 So.2d at 692. Here, the trial court ruled on FMCC's motion for summary judgment eight days before the Mardises even deposed Moore. In any case, "agency is to be determined by the facts and not by how the parties characterize the relationship." Butler v. Aetna Finance Co., 587 So.2d 308, 311 (Ala.1991).
We also note the Mardises' argument that the "floor-planning" method, in which FMCC financed Cloverleaf's inventory, established a principal-agent relationship. "First, it is axiomatic that for an agency relationship to exist, there must be a right of control by the principal over the agent." Butler, at 310. No such right of control existed here. FMCC exercised no influence over Cloverleaf's negotiations with its customers and had no authority over how Cloverleaf should conduct its business of selling cars to retail customers. If Cloverleaf were not floor-planned with FMCC, it would simply go to another creditor for the same service.
Finally, the Mardises' argument that FMCC's repossession of the automobile constituted a "ratification" of Cloverleaf's conduct is without merit. This Court noted in Kimbrel, supra, that the peaceable repossession of Kimbrel's tractor was nothing other than the proper exercise of Freightliner Credit's rights as the creditor under the security agreement. Although the FTC regulation discussed above was no doubt intended to protect consumers from the artificial divorce of a seller's misconduct from a creditor's rights and obligations, there was never any intent to create a new and artificial relationship between the two separate entities. This Court cannot agree that FMCC's mere exercise of its rights as a creditor should expose it to liability for the actions of Cloverleaf. Nor can Cloverleaf's possible knowledge of the error in the model year of the automobile be imputed to FMCC. The two corporations have an arm's-length business arrangement, but they are not related as principal and agent. The summary judgment was proper with respect to the Mardises' state law claim for fraud against FMCC.
The Mardises' third contention is that they timely revoked their acceptance of the automobile and rescinded the contract. However, as previously noted, the FTC regulations did not provide a basis for an affirmative action against FMCC for rescission based on allegations of wrongful conduct on the part of Cloverleaf, and the undisputed evidence shows that FMCC was not liable under the state law doctrine of respondeat superior for any fraud that may have been committed by Cloverleaf. Therefore, we need not determine whether the Mardises timely revoked acceptance of the automobile and rescinded the contract. Of course, the Mardises can raise this issue in defense to FMCC's counterclaim.
The Mardises' fourth contention is that they were not given proper notice of the hearing on FMCC's motion for summary judgment. Rule 56(c)(2), A.R.Civ.P., requires 10 days' notice in order to allow the party opposing the motion to prepare a defense. On July 1, 1993, the parties argued FMCC's motion to set aside the order denying its previous motion for summary judgment. The Mardises requested, and were granted, an additional 14 days to submit a brief in response to the motion. The trial court's order dated July 7, 1993, states, "Parties requested fourteen (14) days to file briefs in this event; parties have fourteen (14) days to submit briefs on the motion for summary judgment." The Mardises indicated at the July 1 hearing that their understanding was that the 14 days would be counted from that date. However, even if the 14 days are counted from July 7, rather than July 1, it would not matter, because the judge did not grant FMCC's motion until July 21, 1993. The trial court's written notation dated July 21, 1993, states, "The parties were given 14 days to file briefs. Upon consideration of the argument and briefs, *706 this motion is granted." Thus, the Mardises had at least 10 days to prepare their response, and they cannot claim inadequate notice under Rule 56(c)(2).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., concurs in the result.
COOK, J., dissents.
COOK, Justice (dissenting).
I agree with the majority that the FTC, through 16 C.F.R. § 433.2, did not intend that the consumer be restricted to defensive actions. However, I disagree with the holding that this regulation does not support the Mardises' contention that they may maintain against Ford their claims against Cloverleaf. The commentary quoted by the majority does not require a total failure of performance in order for there to be a recovery, but rather lists it as a situation in which the consumer should be allowed to recover: "In a case of non-delivery, total failure of performance, or the like, we believe that the consumer is entitled to a refund of the monies paid on account." The notice required by the statute provides in pertinent part: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto..." (emphasis added). Thus, by the plain language of the statute, the Mardises have a right to an affirmative action to rescind the contract and recover damages from Ford, to the extent of payments made under the contract, based on the wrongful actions of Cloverleaf.
The majority's interpretation of this statute is contrary to the plain meaning of the words of the statute and the purposes of the statute as discussed in the commentary. This Court held in Gill v. Fidelity Financial Services, Inc. 631 So.2d 913, 914 (Ala.1993), that an "assignee/creditor, shall, under the terms of the `notice,' be vicariously liable ... to a consumer/debtor for claims provable `against the seller of [the] goods.'" The situation in Gill is virtually identical to that in this case. Gill sued the finance company for misrepresentations she says were made to her by the seller of the car. While this Court did not determine whether Gill would actually recover, it did hold that a consumer could maintain a cause of action against a finance company based on fraud or breach of contract by the seller. Gill did not require that the plaintiff prove that she received little or nothing of value in order to get affirmative relief against the finance company.
In a similar case, the Court of Appeals of Georgia allowed a consumer to recover from a finance company for fraud perpetrated by the seller of a car, holding that under 16 C.F.R. § 433 "any claim [a consumer] may have against [a seller] can properly be asserted against [the finance company]." Bennett v. D.L. Claborn Buick, Inc., 202 Ga.App. 308, 414 S.E.2d 12 (1991).
I prefer the approach of the Court of Appeals of Texas in its analysis of § 433 in Oxford Finance Companies, Inc. v. Velez, 807 S.W.2d 460 (Tex.App.1991). That court said that the Official Comment (specifically the portions found at 40 Fed.Reg. 53527)
"was apparently made to explain why the FTC declined to adopt a version of the rule that would have limited consumers to asserting their claims against assignees only in the context of defending a suit by the assignee for collection of payments due under the contract. We do not agree that the comment requires a plaintiff to obtain a finding that she has received little or nothing of value under the contract in order to recover affirmative relief from her creditor.
"The clear and unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be `stepping into the seller's shoes.' The creditor/assignee will become `subject to' any claims or defenses the debtor can assert against the seller. The notice does not say that a seller will be liable for the buyer's damages only if the buyer received little or nothing under the contract." *707 807 S.W.2d at 463. The court found that the plaintiff could recover without a jury determination that she had received little or nothing of value.
I respectfully dissent.