MONROE, Judge.
Fidelity Financial Services, Inc., sued Mitchell Holland and Tammy Holland in the Mobile County District Court, seeking to recover the balance of an automobile loan the Hollands had with Fidelity. Fidelity had repossessed the car from the Hollands and then had resold it; however, the proceeds from the resale were not enough to cover the balance of the loan. The Hollands filed a counterclaim; their request to have the case' moved to circuit court was denied. The Hollands then dismissed their counterclaim and consented to a judgment in favor of Fidelity as to its claim against them. Thereafter, the Hollands appealed the judgment to the circuit court and refiled their counterclaim, alleging fraud. They also sued Auto Mart, the used car dealership where they had bought their car, and certain of its employees. That action was consolidated with the counterclaim against Fidelity.
Fidelity dismissed its claim against the Hollands. It then moved for a summary judgment as to the Hollands’ counterclaim. After a hearing, the trial court entered a summary judgment in favor of Fidelity as to the eight counts of the counterclaim dealing *1248 with fraud. A summary judgment was not entered as to the Hollands’ claim alleging breach of contract. The trial court certified the summary judgment for Fidelity as final, pursuant to Rule 54(b), Ala. R. Civ. P. The Hollands appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Crowne Investments, Inc. v. Bryant, 638 So.2d 873 (Ala.1994). The burden is on the moving party to show that there is no material fact in dispute; the evidence is to be viewed in the light most favorable to the nonmovant, and all reasonable inferences are to be drawn in that party’s favor. Id.
Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). To defeat a defendant’s properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
When viewed in the light most favorable to the Hollands, the evidence tends to show the following. In March 1993, the Hollands bought a Mazda RX7 from Auto Mart, a used-car dealership in Mobile. They were told the car they purchased was a Mazda RX7 GXL Turbo with cruise control; however, the car was really a standard model without cruise control. According to evidence presented by the Hollands, the standard model is a substantially less expensive model than the one they thought they were paying for. Furthermore, the vehicle identification number (VIN) on the vehicle did not match the VIN listed on the paperwork the Hollands completed when purchasing the car. The Hollands were not aware of the discrepancy in the VINs until they attempted to get a new license plate for the car in July 1993.
Fidelity financed the purchase for the Hollands at an interest rate of 28%. In June 1993, when the Hollands did not yet have insurance on the Mazda, Fidelity notified them that it was charging them for “force-placed” insurance and added $130.60 to their monthly payments. The Hollands paid the extra amount in their June payment. In July, when the Hollands discovered that the car they paid for was not the car they were driving, Tammy Holland contacted Fidelity. She said she talked to someone named “Angel” and that Angel told her that Fidelity was aware of the VIN discrepancy. Evidence shows that the Hollands were paying insurance premiums on a GXL model, the car whose VIN appeared in their sales contract, and not the car they were actually driving. The Hollands objected to paying insurance premiums on a vehicle they did not have and asked that the paperwork be corrected.
Mitchell Holland said he talked with “Steve” at Fidelity several times and that he went to Fidelity’s office in an attempt to straighten out the problem. Steve copied the VIN from the Hollands’ vehicle and saw that it did not match the VIN on the car on which the Hollands’ insurance premiums were calculated. Nonetheless, it appears from the evidence that Fidelity made no attempt to correct the problem and that it continued to charge the Hollands a premium for insurance on a car they did not have.
In his deposition, Mitchell Holland testified that he continued making the payment on the car itself, but stopped making the premium portion of the payment. Fidelity’s records reflect that the Hollands continued to make the payment on the car through December 1993; Fidelity repossessed the car in January 1994. The car was taken from Mobile to a business known as Father and Son Automotive Repair in Jackson, Mississippi. That business is operated by Joe Ainsworth, the brother-in-law of Steve Kaufinan, the Fidelity manager who authorized the repossession of the Hollands’ car. Fidelity billed the Hollands $3,000 — at 28% interest — for repairs that were allegedly made to the car. The Hollands presented evidence indicating that *1249 the repairs were either not made (for example, they were billed for new parts but the original parts were still on the car at a later inspection), or the Hollands were charged excessive amounts for repairs that were made.
The Hollands presented evidence indicating that the car was resold as a Mazda GXL Turbo, and Fidelity provided the financing for the purchase of the ear, although by this time clearly Fidelity knew that the car was not a GXL model. Furthermore, there is evidence in the record to indicate that Auto Mart would sometimes pay a detailing business to have standard vehicles striped or “bogeyed” so that they would appear to be “high-end” cars. An Auto Mart employee testified by deposition that he would make cash payments to Buford Tolbert, a Fidelity branch manager, so that Fidelity would agree to finance deals on Auto Mart’s “bogeyed” vehicles.
In their nine-count complaint, the Hollands made the following allegations: (1) that Fidelity breached its contract with the Hollands (this is not an issue on appeal); (2) that Fidelity suppressed the fact that the Hollands could insure the vehicle themselves; (3) that Auto Mart and its agents intentionally and/or recklessly misrepresented the type of car the Hollands were buying; (4) that Auto Mart and Fidelity suppressed the fact that the car was not the type it was represented to be; (5) that Fidelity fraudulently failed to disclose that it would not rebate unaccrued interest, to which the Hollands said they were entitled, and that Fidelity fraudulently failed to disclose that it was charging the Hollands for “force-placed insurance on a car that was not their collateral”; (6) that Fidelity acted in reckless disregard of the Hollands’ rights in repossessing the car, in having repairs made to the ear, and in not acting to rescind those transactions even though it knew the car it repossessed and had repaired was not the car the Hollands had purchased; (7) that Fidelity did not proceed in good faith and in a commercially reasonable manner in the resale of the vehicle after it was repossessed; (8) that Fidelity failed to disclose that it was forcing Auto Mart, as its agent, to charge an unreasonably high price for the vehicle; and (9) that Fidelity and Auto Mart had entered into a scheme to defraud the Hollands by forcing Auto Mart to charge them more than the vehicle was worth, by force-placing insurance on a car Fidelity knew was not the car the Hollands had intended to purchase, by force-placing insurance on the vehicle without telling the Hollands they could purchase their own insurance, and by causing needless repairs to be performed to the car. In their amended complaint, the Hollands alleged that Fidelity and Auto Mart were alter egos, or extensions or instrumentalities of one another. The Hollands did not allege an agency relationship between Fidelity and Father and Son Automotive Repair.
The Hollands contend that the trial court erred in entering a summary judgment in favor of Fidelity on the eight claims dealing with fraud because, they say, they presented substantial evidence of fraud and conspiracy to defraud, which we will treat as their claim of a scheme to defraud. However, in their brief to this court, the Hollands do not address the propriety of the summary judgment as to a number of its claims. They make no argument regarding count two — the claim that Fidelity failed to disclose that the HoEands could insure the car themselves. They make no argument regarding count six — the claim that Fidelity’s actions in repossessing and repairing the car constituted reckless disregard for the Hollands’ rights. They make no argument as to count seven— the claim that Fidelity did not reseE the car in a commercially reasonable manner. And they make no argument as to count eight— the claim that Fidelity faüed to disclose the difference between the amount financed by the HoEands and the amount Fidelity paid Auto Mart for the assignment of the contract, a difference commonly known as the dealer discount. Because the HoEands did not address these claims, we wiE affirm the summary judgment as to counts two, six, seven, and eight.
Count three alleges that Auto Mart and its agents intentionaEy and/or recklessly misrepresented the type of car the HoEands were purchasing. Therefore, for Fidelity to be liable under count three, the HoEands had *1250 to show that Fidelity was an agent of Auto Mart. Fidelity contends that it had no agency relationship with Auto Mart. We agree.
“When a defendant’s liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala.1988); Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent’s performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract.”
Malmberg v. American Honda Motor Co., 644 So.2d 888, 890 (Ala.1994). Our review of the record shows that Auto Mart and Fidelity are separate entities and that neither has any right of control over the performance of the other. Auto Mart was free to sell vehicles in whatever manner it chose; Fidelity was free to provide financing to Auto Mart’s customers in whatever manner it chose. There was no contract between Fidelity and Auto Mart; Auto Mart was under no obligation to use Fidelity for financing, and Fidelity was not required to provide financing, lie .relationship between Fidelity and Auto Mart was not one of agent and principal. Mardis v. Ford Motor Credit Co., 642 So.2d 701 (Ala.1994); Turner v. Deutz-Allis Credit Corp., 544 So.2d 840 (Ala.1988); and Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala.1985). Therefore, the summary judgment was proper as to count three.
Count four alleges that both Auto Mart and Fidelity suppressed the fact that the vehicle purchased by the Hollands was not the type of vehicle it was represented to be. Fidelity contends that it did not owe the Hollands a duty to disclose facts relating to the car itself. Section 6-5-102, Ala.Code 1975, provides as follows:
“Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.”
Whether a party has a duty to disclose certain facts must be determined on a case-by-case basis. Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala.1980). “A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). He who joins in the consummation of a transaction, known to have been negotiated by fraud, becomes a party to the fraud.” Id., 384 So.2d at 86.
The Hollands presented evidence that Auto Mart made cash payments to Fidelity in exchange for Fidelity’s providing financing for customers who were buying “bogeyed” vehicles. They also presented evidence that Auto Mart knew that the VIN of the car shown on the contract and the VTN of the car the Hollands actually possessed were not the same, but that Auto Mart did not notify the Hollands of the discrepancy. Further, the Hollands presented evidence indicating that even though Fidelity was aware of the discrepancy, it continued to charge the Hollands an insurance premium on a vehicle they did not have, even after the Hollands went to Fidelity for help in solving the problem. When the Hollands stopped paying the insurance premium portion of their monthly payment to Fidelity, Fidelity repossessed the vehicle.
The evidence presented by the Hollands creates a genuine issue of material fact as to whether Auto Mart committed fraud in selling the Hollands a vehicle that was not what Auto Mart represented it to be. Whether Fidelity knew of the alleged misrepresentation, yet joined into the consummation of the transaction by financing a deal that it knew to be fraudulent, is also a question of fact for the jury to determine. The evidence is sufficient to create a jury question as to whether *1251 Fidelity owed the Hollands a duty of disclosure and as to whether it breached that duty in failing to disclose to the Hollands the misrepresentations made about the vehicle they were driving. Therefore, the trial court erred in entering the summary judgment as to count four, the claim that Auto Mart and Fidelity suppressed the fact that the car the Hollands purchased was not the car it was represented to be.
Likewise, the Hollands’ evidence is sufficient to create a genuine issue of material fact as to two other counts in their complaint, that is, count five, whether Fidelity fraudulently failed to disclose that it was charging the Hollands for foreedplaced insurance on a car they did not have, and count nine, the claim that Fidelity and Auto Mart had entered into a scheme to defraud the Hollands.
Based on the evidence presented, a jury could reasonably determine that Auto Mart and Fidelity had worked out a scheme in which Auto Mart would charge higher prices for standard model vehicles by selling them as higher-end models; Fidelity would provide the financing for the “bogeyed” cars; and then Fidelity would charge higher insurance premiums on the “bogeyed” cars, claiming those cars were more expensive models than they actually were. A jury could also reasonably determine that Fidelity had acted fraudulently in failing to disclose that it was charging the Hollands an insurance premium for a car they did not have. Because the Hollands presented sufficient evidence to create genuine issues of material fact as to counts five and nine, the trial court erred in entering the summary judgment as to those counts.
The summary judgment is reversed as to counts four, five, and nine. The remainder of the judgment is affirmed. This cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.