[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 245 
Aaron Luck and Amy Luck filed a complaint in the Montgomery Circuit Court against Jack Ingram Motors, Inc. ("Jack Ingram"); Roy Crow, a salesman for Jack Ingram; and Primus Automotive Financial Services, Inc. ("Primus"). The plaintiffs alleged fraud, suppression, and civil conspiracy. Each defendant moved for a summary judgment; the court entered a summary judgment in favor of Primus, but denied the motions of the other defendants. The court made Primus's summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P. The plaintiffs appeal from the summary judgment for Primus. We affirm.
The plaintiffs leased a Mazda 626 automobile from Jack Ingram. Crow, the salesman, explained to the plaintiffs a written lease agreement; the plaintiffs then signed that agreement and Crow signed it on behalf of Jack Ingram. The lease was assigned to Primus. Primus had provided Jack Ingram with a handbook setting out the terms on which Primus would accept the assignment of a lease. Furthermore, Primus had supplied Jack Ingram with forms that had Primus's corporate name printed at the top; these forms were commonly used by Jack Ingram when negotiating lease transactions with customers. Primus is not, however, the exclusive source of financing for automobiles leased through Jack Ingram, and customers who lease their vehicles through Jack Ingram are not obligated to finance their leases through Primus. They may choose among several sources of financing, including finance companies, banks, and credit-card companies.
The plaintiffs alleged that Primus had committed fraud through misrepresentations made directly by Primus to them and also through misrepresentations made to them by Jack Ingram, which the plaintiffs say was acting as an agent of Primus. The plaintiffs argue that the summary judgment was improper both as to the fraud claims and as to the civil-conspiracy claim. They make no argument here relating to the suppression claim.
In reviewing a ruling on a summary-judgment motion, this Court applies the same standard the trial court applied to the evidence to determine whether the evidence created a genuine issue of material fact. Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). A summary judgment for the defendant is generally inappropriate when the plaintiff has presented substantial evidence of each element of the cause of action, but if there is no substantial evidence as to some particular element essential to a cause of action, or if for some other reason there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law, then the court should enter a summary judgment.Ex parte General Motors Corp., [Ms. 1971318, September 24, 1999] ___ So.2d ___, ___ (Ala. 1999).
 The Claim of Direct Misrepresentation
The plaintiffs argue that Primus directly misrepresented to them facts concerning an "acquisition fee." Specifically, they contend that Crow told them they would not have to pay an "acquisition fee," and that the documents related to the lease indicated that they were not paying such a fee. However, they say they later discovered that while they did not pay such a fee "up-front," a $450 "acquisition fee" had in fact been charged to them and had been incorporated into their monthly payments.
A party alleging fraud by misrepresentation must prove four elements: (1) that the defendant made a false representation concerning an existing material fact; (2) that the defendant made that *Page 246 
misrepresentation while knowing that it was false, or made it recklessly, or made it with no knowledge as to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation; and (4) that the plaintiff incurred damage proximately caused by the reliance. Ex parte Government EmployeesIns. Co., 729 So.2d 299, 304 (Ala. 1999). While the general rule, as just stated, contains the element of "reasonable reliance," that element is not applicable in this particular case. This case was filed before this Court released its opinion inForemost Insurance Co. v. Parham, 693 So.2d 409 (Ala. 1997), on March 14, 1997. The Foremost Insurance opinion substituted the "reasonable reliance" element for the element of "justifiable reliance," which had formerly applied in fraud cases. That change in the law was prospective. Thus, in this particular case, the plaintiffs would have to prove "justifiable" reliance on Primus's alleged misrepresentations.
The plaintiffs failed to prove the first element of misrepresentation. They presented no evidence indicating any contact between them and Primus at any time during this transaction. Crow handled all of the negotiations on behalf of Jack Ingram. Primus was not involved until after the lease had been negotiated. Having no contact with the plaintiffs, it was impossible for Primus to falsely misrepresent a fact to them. Thus, the plaintiffs have no valid claim based on an alleged direct misrepresentation.
The plaintiffs claim that the financing forms themselves, furnished by Primus to Jack Ingram, make a misrepresentation. The plaintiffs' brief, however, more accurately reflects an argument that the wording and the numbers entered on the form by Crow constitute a misrepresentation — i.e., a statement to the effect that they would not be paying an acquisition fee, when in fact they were paying such a fee. The blank forms themselves contain no misrepresentation. The plaintiffs failed to prove that Primus had a part in negotiating the transaction, or had a part in any other aspect of the transaction as it pertained to the acquisition fee, and they failed to prove their contention that the forms themselves misrepresent the facts concerning the acquisition fee. Thus, they failed to present substantial evidence of one of the elements of fraud. The summary judgment was proper as to the plaintiffs' claim of fraud based on alleged misrepresentations made directly by Primus.
 The Claim of Fraud by an Agent
The plaintiffs also argue that Primus is vicariously liable for the actions of Jack Ingram because, they claim, Jack Ingram was acting as an agent of Primus, and as Primus's agent made misrepresentations concerning the acquisition fee. They support this claim with the fact that Primus provided Jack Ingram with a handbook containing guidelines for leases that Primus will accept; the fact that Primus provided Jack Ingram with forms; and the fact that Primus had the right to purchase the lease contract between Jack Ingram and the plaintiffs after it was executed. In Kimbrelv. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala. 1985), this Court held that actions similar to those alleged by the plaintiffs in this case are not evidence of a principal-agent relationship between the finance company and the dealership:
 "Kimbrel [the customer] contends that [Liberty Truck Sales, the dealer,] was an agent of Freightliner [Credit Corporation, the finance company]. As proof of this, Kimbrel argues that Freightliner had a right of approval of Kimbrel's credit, that Freightliner's name appeared upon the contract Kimbrel signed with Liberty, and that Freightliner dictated the terms of Kimbrel's payments. None of these actions is inconsistent with the extending of credit by an institution, and these actions would not legally amount to a ratification of any statements made during negotiations by Liberty employees. There is no evidence in the record that the relationship *Page 247 
 between Liberty and Freightliner would support a finding of agency."
Id. at 97. Furthermore, this Court has consistently upheld this principle. Turner v. Deutz-Allis Credit Corp., 544 So.2d 840
(Ala. 1988) (holding that the dealer's presenting and offering the finance plans of a finance company was not evidence of a principal-agent relationship); Battles v. Ford Motor Credit Co.,597 So.2d 688 (Ala. 1992) (finance company's right of approval and the fact that its name appeared on forms did not establish agency); Mardis v. Ford Motor Credit Co., 642 So.2d 701 (Ala. 1994) (proof of dealer's offering finance plan does not establish principal-agent relationship). The evidence offered as proof of an agency relationship in the present case is similar to the evidence presented in those cases cited above. It is clear that there is no principal-agent relationship between Primus and Jack Ingram.
The plaintiffs also contend, as part of their agency argument, that Primus ratified the lease agreement that was negotiated and executed by them and Crow. In ratifying it, they allege, Primus became a party to the alleged misrepresentation. We disagree. As with the general agency question above, this Court has held that factors such as the finance company's right of approval and the appearance of the finance company's name on forms does not amount to a ratification of any statements made by the dealer during its negotiations with the customer. Kimbrel, 476 So.2d at 97; Mardis v. Ford Motor Credit Co., 642 So.2d 701,705. Consequently, it is clear that Primus, in accepting the lease, was not ratifying statements or representations made during the negotiations between Crow and the plaintiffs. Therefore, the summary judgment was also proper as to the plaintiffs' claim of fraud based on alleged misrepresentations of an agent.
 The Conspiracy Claim
The plaintiffs claim that Primus conspired with Jack Ingram and Crow in order to defraud the plaintiffs. In order to succeed on a civil-conspiracy claim, a plaintiff must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means. McLemore v. Ford Motor Co.,628 So.2d 548 (Ala. 1993); see also AmSouth Bank, N.A. v. Spigener,505 So.2d 1030, 1040 (Ala. 1986). In order to prove a conspiracy, a plaintiff may present circumstantial evidence.Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala. 1988).
The plaintiffs support their conspiracy claim by offering evidence of four things they say show a conspiracy between Primus and Jack Ingram: (1) that Primus provided Jack Ingram with a handbook, which the plaintiffs say instructed Jack Ingram how to hide the acquisition fee in the "cap cost" and not disclose it to the customer; (2) that Primus must have learned of the misrepresentation when it reviewed the forms, which were filled out by the plaintiffs and Crow, during the process by which it approved the assignment of the lease, and that it should be held to have thereby ratified Crow's actions; (3) that Primus received all of the proceeds of the acquisition fee; and (4) that the lease, on its face, misrepresents the fact that other fees can be rolled into the monthly lease payment when it states that there are no other charges payable monthly.
The handbook issued by Primus to Jack Ingram offers no evidence whatever of a conspiracy. We have thoroughly reviewed the pages of the handbook cited by the plaintiffs in support of their proposition that the handbook includes "instructions for Mazda dealers as to how to charge an acquisition fee to their lease customers, hide the acquisition fee in the cap cost and not disclose the acquisition fee to customers," as well as the remaining portions of the handbook, and we can find absolutely no evidence of any such instruction. Instead, the pages referred to by the plaintiffs instruct the dealer only on how to properly fill out the forms if the customer wishes to have the lease assigned to Primus. *Page 248 
An example within the handbook does include a $450 acquisition fee that was applied to the total amount, which was then used to determine monthly payments, but the handbook in no way advises the dealer to hide this fee. The handbook, in its entirety, is designed to provide certain guidelines for dealers' participation in the Primus lease programs; it provides no evidence of a conspiracy.
The second and fourth items mentioned by plaintiffs both deal with the face of the lease forms that were provided to Jack Ingram by Primus. The plaintiffs claim that these forms indicate the misrepresentation, and they claim that Primus had knowledge of the misrepresentation, based on its dealing with the forms when it agreed to accept an assignment of the lease. Nothing in the lease documents indicates a misrepresentation. The lease worksheet clearly points out that no acquisition fee was included in the "INITIAL CHARGES" section of the worksheet, but that it was included in the total cost of the transaction indicated by the "NET AGREED VALUE — CAPITALIZED COST" section. In other words, the worksheet indicates that while the plaintiffs would not have to pay an acquisition fee up-front, such a fee would be included in the total amount that was used to calculate the monthly lease payments. Furthermore, the lease itself makes no misrepresentation, contrary to the plaintiffs' claim. On the lease, the line labeled "Other Charges Payable Monthly" comes after the line that states the monthly payment, a payment that already included the acquisition fee. Therefore, the "Other-Charges-Payable-Monthly" line could refer only to payments that would be made monthly over the term of the lease other than the monthly payments, which had already been stated. Therefore, it is clear that the documents evidence no misrepresentation.
The other item the plaintiffs offer as proof that Primus was involved in a conspiracy is the fact that Primus received all of the proceeds of the acquisition fee. Primus receives proceeds from leases because it purchases leases from the dealer. In other words, the leases are assigned to Primus, and therefore Primus is entitled to the proceeds, including the acquisition fee, which can be built into the monthly payments. If this made Primus a conspirator, then all other possible assignees used by Jack Ingram, such as finance companies, banks, and credit-card companies, could also be conspirators. We do not agree that this is evidence of a conspiracy. Therefore, we conclude, the plaintiffs failed to present substantial evidence indicating a conspiracy between Primus and Jack Ingram. The summary judgment was proper as to the conspiracy claim.
The summary judgment for Primus is affirmed.
AFFIRMED.
MADDOX, SEE, BROWN, and ENGLAND, JJ., concur.