**In the Matter of MIAMI GENERAL HOSPITAL, INC., Debtor.**

**The STATE OF FLORIDA, DEPARTMENT OF INSURANCE, DIVISION OF REHABILITATION AND LIQUIDATION, as Receiver of the Estate of International Medical Centers, Inc., Appellant,**

v.

**Gui L.P. GOVAERT, trustee for the Estate of Miami General Hospital, Inc., Appellee, Defendants.**

No. 89–1439–CIV.

United States District Court, S.D. Florida.

Feb. 2, 1990.

Brian K. Goodkind, Robert H. Cooper, Miami, Fla., for appellant.

Andrew Moriber, Miami, Fla., Thomas Equels, Coral Gables, Fla., Janie Locke Anderson, Scott Baena, Miami, Fla., for defendants.

## MEMORANDUM OPINION ORDER DENYING RELIEF ON APPEAL

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on the appeal of Appellant STATE OF FLORIDA DEPARTMENT OF INSURANCE AND THE DIVISION OF REHABILITATION AND LIQUIDATION as Receiver for the estate of INTERNATIONAL MEDICAL CENTERS (IMC) from the Bankruptcy court's ruling in favor of the trustee for the MIAMI GENERAL HOSPITAL, INC. (MGH) on the receiver's claims for administrative priority. 101 B.R. 361.

### Factual Background

Appellant's brief alleges that MGH was a wholly owned subsidiary of IMC. Appellant was appointed receiver of IMC and ran the Miami General Hospital (the Hospital), MGH's sole asset, for some time to care for patients still recovering. Appellant operated the Hospital at a loss using funds available from the receivership for a limited time to cover daily expenses. Appellant claims this was to ensure the orderly transfer of patients out of the facility and to find a buyer or persuade the corporation's secured creditors to take over the Hospital. All suits against the Hospital were enjoined by order of the receivership court. The Receiver planned to cease management, one way or another, by June 30, 1987.

Some dissenting shareholders filed a petition for involuntary bankruptcy against MGH. The IMC Receiver consented to court supervision of the operation and sale of the Hospital, because, Appellant claims, it was in the best interest of MGH's creditors. The interested parties insisted the court require the Receiver to stay on until there was a sale. The Receiver declined an appointment as permanent trustee, but continued managing until the Trustee took over. By this time Appellant claims it had spent more than $2.5 million in running the Hospital.

The Hospital was then sold to First American Bank and Trust (FABT) for $15,-500,000.00 as an operating entity with insurance, licenses and certificates in place. The Receiver sought reimbursement of its expenditures. The Trustee objected to the application for administrative priority. The Bankruptcy court sustained these objections and denied the administrative claims, which is the subject of this appeal.

Appellee's brief presents a somewhat different characterization of these facts. Appellee frames the Receiver's claim as being for funds it never expended because, as was stipulated, they came out of IMC's assets. Appellee states the facts as follows:

1. IMC controlled all MGH's day-to-day activities and caused it to pledge all its real and personal property for a loan from FABT for $10 million. Much of this went to IMC, which pledged all of its assets to secure repayment.

2. Subsequently, pursuant to the rehabilitation order of the receivership court, the Receiver was authorized to take possession of all IMC's assets, including all the stock of MGH. But title to this property never vested in the Department of Insurance, and the Receiver was not authorized to operate or fund any entity of IMC or protect the creditors of its subsidiaries.

3. An order for relief under Chapter 11 was entered June 19, 1987. On July 1, 1987 the Receiver ceased funding MGH. Funding came from FABT pursuant to an agreement with the Trustee as to the use of accounts receivable which had been

pledged as collateral. This continued while the Trustee attempted to find a buyer. FABT eventually bought the hospital pursuant to a Credit Bid Stipulation with the Trustee, and no cash was paid to the MGH estate. The Receiver objected to the sale on the ground that the loan transaction was usurious. The Bankruptcy court confirmed the sale. The sale was closed September 25, 1987, FABT having been in possession since July 9, 1987. At no time did the Receiver intimate that it intended to assert a claim against the MGH estate.

4. The Trustee then brought suit against FABT pursuant to a reservation of that right in the stipulation to determine the validity, priority and extent of FABT's liens arguing that FABT and IMC conspired to defraud the creditors of MGH by appropriating all equity MGH had in its property. The case was settled. The Trustee got $1,250,000. and agreed to release any right to surcharge FABT for the reasonable cost of preserving its collateral. The Receiver did not object at the hearing where this was approved, and did not express its intent to file an administrative claim that would exhaust the proceeds of the settlement.

Appellant argues that there was no finding by the Bankruptcy court of any impropriety or wrongdoing by IMC or by the Receiver. These are collateral matters not properly presented on appeal which tend to confuse the issues. The Court agrees that Appellee's brief contains many factual assertions which were not part of the Bankruptcy court's opinion. These assertions are therefore not properly before this Court on appeal. Among these is the final order on FABT's proof of claim in the receivership court. Likewise, details of the events after appointment of the trustee such as the sale of the hospital, the credit bid stipulation, and the trustee's objections to and settlement of FABT's claim were not mentioned in the Bankruptcy court's order. These played no part in the rejection of the Receiver's claim.

The Receiver was not a party to the litigation between FABT and the Trustee, thus it has no relevance to this proceeding.

Moreover, the lawsuit was settled and there was never any indication of wrongful conduct on the part of FABT or IMC. Inequitable conduct was alleged but never proven at trial. It is not one of the grounds recited by the Bankruptcy court for denying Receiver's claim. Therefore, this Court does not consider such conduct as a material factor in denying the appeal.

## Standard of Review

The Bankruptcy court's order 101 B.R. at p. 362, fn. 4 states that this was to be legal argument on the issue of administrative priority based on stipulated facts; however, the same page contains the heading "findings of fact and conclusions of law". The opinion does contain some findings of fact. In those places where there does appear to be fact finding this Court accords the findings complete deference as none are clearly erroneous. However, even under the plenary review standard urged by Appellant this Court would be constrained to deny the requested relief. The Court now proceeds to the merits of the Appeal.

## Insider Claim Subordination

■ The Bankruptcy court reasoned that since the Receiver spent IMC's estate money and not its own in running MGH, this is really an insider claim. This is because IMC is the parent corporation and of MGH is its subsidiary. The Court cited *Case et al. v. Los Angeles Lumber Products*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) for the familiar rule that insider claims are generally subordinate, not first in the scheme of distribution. That case invalidated an agreement that left the claims of contributing stockholders higher than those of bondholders. The stockholders contributed to try to save the company by purchasing more stock. Obviously this is different than a claim for administrative expenses. However the point is well taken that, since IMC owned all the stock in MGH, it was to IMC's advantage to keep the Hospital going as a business.

Appellant would characterize the situation differently. Appellant claims that by going into receivership, IMC ceased to exist as an entity and all its assets vested in the Receiver, including the Hospital. MGH

was also insolvent and ceased to exist as an entity, thus the parent-subsidiary relationship dissolved. The Bankruptcy court admitted that all the stock of MGH became the property of the Receiver. Appellant claims that all IMC funds also became receivership property, thus the receiver expended its own funds. Albeit novel, this is not a convincing argument that the Receiver expended its own funds. This Court agrees that this was an insider claim.

■ To have equitable subordination of the insider claim, Trustee bears the burden of presenting material evidence of unfair conduct, and if he succeeds then the claimant must show the fairness of the transaction. Although there was never any finding by a court that there was inequitable conduct by IMC, the Bankruptcy court at p. 363 fn. 5 makes mention of the Trustee's attempt to subordinate the claims of FABT on the grounds that the transactions between it and Debtor (MGH) were fraudulently intended to benefit debtor's parent IMC. Any priority awarded to the Appellant is priority for IMC's estate.

■ In *In re N & D Properties,* 799 F.2d 726 (11th Cir.1986) the court applied the above standard of equitable subordination. There petitioner was found to be an insider and her claim was disallowed where "[Her] behavior, while in control indicat[ed] that she was acting solely for her own benefit, to minimize her risk of loss without any consideration for other creditors." In the case at bar the behavior of the Receiver in running the hospital, albeit not a breach of fiduciary duty, was clearly for its own benefits. The finding of the Bankruptcy court that the Receiver's claim should be subordinated as an insider claim cannot be disturbed by this Court on appeal as it is founded on solid legal ground.

### Source of Funds

The matter of the FABT transaction is actually noted in connection with other ground for disallowing Appellant's claim, namely, that the source of from which the Receiver seeks reimbursement was not produced by it in any way. It was the proceeds of the settlement of litigation between FABT and the Trustee for those transactions which Trustee claims were fraudulent. Whether recognition of some impropriety played a role in the Bankruptcy court decision is not before this Court since it is not made part of the opinion.

The finding that the funds contributed by the Receiver created no source of funds from which to pay MGH's expenses may be lacking in support in light of the fact that the funds expended, though not the Appellant's, allowed the hospital to be sold as a going concern and satisfied a $15 million claim of MGH's largest creditor, FABT. Thus the second ground recited by the Bankruptcy court for denying Appellant's claim is not as solid as the first. Nothing in the bankruptcy code says anything about the source of funds being a bar to an administrative claim. However, this Court need not reach the question of the source of the funds, since Appellant's insider status is a sufficient basis upon which to deny its claim.

### Laches

The Bankruptcy court also mentions laches as a reason for denying the claim. However, it was clearly not a significant factor in the decision. The Court likewise finds it unnecessary to reach the issue of whether the claim is barred by laches.

### Custodian Status

The Bankruptcy court also denied Appellant's claim that it was entitled to custodian status. Appellant argues that the Bankruptcy court ignored the plain meaning of "custodian" under 11 U.S.C. Section 101(10). What receiver did, not whether it was officially appointed, is the key determinant. Appellant's funding of MGH was clearly for the benefit of MGH's creditors and was urged by them.

The transcripts of the receivership court hearings June 19, 23, and 29, 1987 refer repeatedly to amounts necessary to care for patients and keep up the hospital as a going concern. The transcripts also reflect the insistence of secured and other creditors that the hospital be maintained as a going concern, yet all declined to provide funds for this, and urged the court to re-

quire the receiver to pay for it. Appellant contends that the absence of a formal order authorizing the receiver's expenditures should not bar their claim in light of the exchanges in open court requiring them to do so. For this they cite to *In re Gloria,* 47 B.R. 370 (D.C.Va.1984).

 The Bankruptcy court ruled that Florida Statute Chapter 631 does not make the receiver of the parent corporation receiver or custodian for a subsidiary. It does not give authority for IMC to take charge of MGH's assets for the benefit of MGH's creditors. The Receiver was not a custodian of MGH and thus its claim is not allowed under section 503(b)(3)(E). The three orders of the receivership court that Appellant contends made it custodian for MGH do not, on their face, appoint Appellant as custodian for MGH. They only grant the Receiver the power to take possession of all IMC assets, which happen to include all the stock of MGH. The mere fact that a parent is in receivership does not mean its subsidiary is part of that receivership. *Greenbaum v. Lehrenkrauss Corp.,* 73 F.2d 285 (2d Cir.1934).

Appellee argues that this is really an intercompany claim disguised as a custodian's claim. They distinguish this from the typical case in which most of the expenses are paid by the receiver out of the receivership estate. Once the debtor petitions, the receiver is within its rights in claiming any expenses it *personally* incurred, for which the estate did not reimburse it, under 503(b)(3)(E). Here the Department of Insurance did not expend any of its own funds, rather it expended funds from IMC, the debtor's parent corporation. IMC has no entitlement to the property.

In this Court's opinion the receiver was never appointed as a custodian, and it was not a receiver of property of MGH in any proceeding not under Chapter 11. Under Section 101(10)(A) a "custodian" is any receiver or trustee of debtor's property appointed in a proceeding not under Chapter 11. Appellant admits no order of the court appointed it custodian, thus it is not a custodian under that definition. Even under its broad definition of custodian, "any third party appointed to take charge" etc., Appellant was not custodian of MGH since they were appointed to take charge of IMC's assets to protect IMC's creditors, not MGH's. This Circuit reads the definition narrowly. *Flournoy v. City Finance (In re Lewis),* 12 B.R. 106, 109 (Bankr.M.D.Ga. 1981).

As it owed a fiduciary duty to IMC's creditors, it could not act on behalf of MGH's creditors without breaching its duty. In statements at two hearings in June 1987 the Receiver acknowledged that it was not Receiver for MGH and did not view it as part of the receivership estate. It was trying to get the court to allow it to cease running the Hospital. In running the Hospital for the time it did, it was attempting to avoid liabilities to IMC's insureds who were being treated at the Hospital. There was never any court order appointing the Receiver as custodian, and it never claimed to be such until one year after the proceedings.

### Post–Petition Claims

The last part of the Bankruptcy court's opinion denies the post-petition claims as administrative expenses under 505(b)(1)(A) because they were not in the ordinary course of business and there was no prior court approval of any post-petition financing. The Bankruptcy court did not cite authority for the proposition that these expenditures were not in the ordinary course of business, but Appellee cites *In re C.E.N., Inc.,* 86 B.R. 303 (Bankr.Me.1988). This case is "all fours" precedent that expenses incurred in preparing to sell a principal asset rather than continuing the business are not in the ordinary course of business. The remaining question is whether there was notice and hearing and prior court approval of the expenses as post-petition financing.

This Court must accord deference to the Bankruptcy court's finding that there was never authorization for the expenditures, since appellant fails to point to any place in the transcript where such authorization is given. It argues that even without express authorization the expenditures were justified as emergency expenditures to keep the

hospital going. However, the *C.E.N.* case is contra; therefore, this is not a basis for disturbing the Bankruptcy court's opinion. Accordingly and upon careful review of the record, it is hereby

ORDERED AND ADJUDGED that the relief requested on Appeal is DENIED.

DONE AND ORDERED.