[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-11720

_____

D. C. Docket No. 96-01798-CV-S-N

WILLIAM CASTLEBERRY,
GLADDEAN CASTLEBERRY,

Plaintiffs-Appellants,

versus

GOLDOME CREDIT CORPORATION,

Defendant-Cross-
Defendant-Appellee,

DAIWA FINANCE CORPORATION,

Defendant-Cross-
Claimant-Appellee,

DAIWA MORTGAGE ACCEPTANCE CORPORATION,
DAIWA AMERICA CORPORATION,
DAIWA SECURITIES AMERICA, INC., et al.,

Defendants-Appellees,

RYLAND MORTGAGE COMPANY,
ADVANTA MORTGAGE CORP., USA,

Defendants,

FEDERAL DEPOSIT INSURANCE CORPORATION,
in its individual corporate capacity and
in its capacity as receiver of Goldome
FSB,

Cross-Defendant-
Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 9, 2005)

Before BIRCH, KRAVITCH and GIBSON[*], Circuit Judges.

BIRCH, Circuit Judge:

This appeal requires us to address federal subject matter jurisdiction under

12 U.S.C. § 1819(b)(2).  Following the removal of their class action lawsuit to

federal district court by Cross-defendants-appellees Federal Deposit Insurance

Corporation-Corporate  ("FDIC-Corporate") and Federal Deposit Insurance

Corporation-Receiver ("FDIC-Receiver"), Plaintiffs-appellants William and

Gladdean Castleberry ("Castleberrys") moved to remand the case back to Alabama

state court.  The district court denied the Castleberrys's motion to remand and

_____

[*] Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting
by designation.

2

ultimately granted summary judgment in favor of Defendants-appellees Goldome

Credit Corporation ("Goldome") and Daiwa Finance Corporation.[1]  We **AFFIRM**.

## I.  BACKGROUND

This appeal arises from the purchase of a home by the Castleberrys from

Masterbuilt Homes, Inc. ("Masterbuilt").  On 4 September 1988, the Castleberrys

entered into an "Installment Sales Contract and Security Agreement" with

Masterbuilt for the construction and finance of a home on property owned by the

Castleberrys in Talladega County, Alabama.  The agreement indicated that the

purchase price for the home was $58,500 and that the purchase would be financed

by a loan from Masterbuilt.  Pursuant to the agreement, the Castleberrys executed a

note which outlined a 20-year loan with an 11 percent annual percentage rate

("APR").  This arrangement required the Castleberrys to pay Masterbuilt $603.81

per month for 240 months.  After the construction was completed by Masterbuilt

and approved by the Castleberrys in November 1988, Masterbuilt assigned its

ownership in the note to Goldome,[2] to whom the Castleberrys began making

---

[1] Daiwa Finance Corporation is a wholly-owned subsidiary of Daiwa America Corporation ("DAC").  Daiwa Mortgage Acceptance Corporation and Daiwa Securities America are also wholly-owned subsidiaries of DAC.  DAC and its three subsidiaries are Defendants-appellees in this action and will be collectively referred to as "Daiwa" in this opinion.

[2] The contract between Masterbuilt and the Castleberrys provided that Masterbuilt reserved the right to assign its interest in the Castleberrys's note to any "financial institution[]." R9-243 at 25.  Moreover, it noted that if the Castleberrys's contract was assigned to Goldome, "Goldome will become an assignee."  R6-130 at Ex. 1.  The contract also listed Goldome's

monthly payments.

At that time, Goldome was a wholly-owned subsidiary of Goldome Secondary Markets, Inc., which in turn was a wholly-owned subsidiary of Goldome Federal Savings Bank ("Goldome Bank"), a New York state-chartered bank. On 31 May 1991, as a result of the failure of Goldome Bank, the New York Superintendent of Banks took possession of Goldome Bank and placed it in receivership under FDIC-Receiver. Pursuant to this role, FDIC-Receiver arranged for the liquidation of Goldome Bank assets, which included selling the portfolio of retail credit obligations containing the Castleberrys's note to Daiwa in 1993.

On 17 January 1995, the Castleberrys filed a class action lawsuit against Goldome in Alabama state court and alleged fraud, conspiracy to defraud, suppression, and the charging of excessive finance rates by Goldome in connection with the agreement the Castleberrys negotiated with Masterbuilt. The Castleberrys alleged that Masterbuilt operated as Goldome's agent and that Goldome instructed Masterbuilt to inflate the purchase price of their house to disguise certain finance fees and rates. According to the Castleberrys, Goldome and Masterbuilt had previously agreed upon a discount rate at which Goldome would purchase sales contracts financed by Masterbuilt and that Goldome instructed Masterbuilt how to

_____

mailing address. Id.

4

increase quoted purchase prices to cover the discount. These price increases were allegedly applied only to customers who, like the Castleberrys, were purchasing houses on credit; these increases allegedly would not have been applied if a customer opted to pay cash. Because the alleged discount agreement between Masterbuilt and Goldome was not disclosed to credit customers but rather disguised in an increase in the purchase price of the home, the Castleberrys maintained that they were defrauded. Moreover, because increasing the purchase price resulted in a lower APR, the Castleberrys alleged that the true finance rate of the Masterbuilt loan exceeded the rate allowed under Alabama law. In the case of the Castleberrys, they alleged that the quoted purchase price of their home included $6,998 in hidden finance fees and that the true cash price was $51,502, which made the true interest rate on their loan 12.98 percent, in contrast to the 11 percent APR disclosed in the loan agreement. R9-243 at 7.

On 19 April 1995, the Castleberrys amended their complaint to add Daiwa and other defendants to the litigation. The action was subsequently certified as a class action. On 2 December 1996, without obtaining leave from the state court, Daiwa filed a cross-claim against Goldome and joined FDIC-Corporate and FDIC-Receiver as defendants. Daiwa claimed that these three entities had an obligation to indemnify Daiwa for any liability from the class claims arising out of the debt

5

obligations portfolio it purchased from Goldome. On 9 December 1996, FDIC-Corporate and FDIC-Receiver[3] removed the action to federal district court pursuant to 12 U.S.C. § 1819(b)(2)(B). The Castleberrys then filed a motion to remand and argued that removal by FDIC-Corporate and FDIC-Receiver was untimely, improper pursuant to 12 U.S.C. § 1819(b)(2)(D), or ineffectual because Daiwa had not properly joined them as parties pursuant to Alabama law. The district court denied the motion to remand and found that it had subject matter jurisdiction.

Subsequently, following discovery, Goldome moved for summary judgment. To support their claims, the Castleberrys offered to prove the arrangement between Goldome and Masterbuilt through the deposition testimony of George Hicks, a prospective dealer for Goldome. Although Hicks admitted that he never participated in any transaction for Goldome, he testified as to his understanding of Goldome's practices based on letters and rate charts he received from Goldome when he was contemplating acting as a dealer who sold loan contracts to Goldome. He testified that his understanding was that Goldome would instruct a builder to charge an inflated cash price for a home to cover the amount of the discount at

---

[3] The district court noted that the 9 December 1996 notice of removal executed by FDIC-Corporate indicated that FDIC-Receiver also joined the removal; however, counsel for FDIC-Receiver did not sign FDIC-Corporate's notice of removal. Castleberry v. Goldome Credit Corp., 969 F. Supp. 705, 707 n.2 (M.D. Ala. 1997). FDIC-Receiver executed its own removal on 15 January 1997. Id. at 707.

which Goldome would subsequently purchase the loan. The district court found that Hicks derived this understanding from a 3 November 1988 letter sent to Hicks by Goldome which read:

> Our builder program is designed so that the builder is always paying a discount to provide us with the required yield at the time of purchase. In other words, the A.P.R. disclosed to the customer is always less than our required yield and the builder must buy down the rate. Of course this discount is disclosed up front to the builder and shows on the commitment letter.

R9-243 at 11-12. Hicks also produced rate charts sent to him by Goldome that instructed builders on increasing purchase prices to cover discounts. While the district court found that Hicks did have sufficient firsthand knowledge under Federal Rules of Evidence 602 and 701 to testify as to Goldome's financing practices, it concluded that his testimony alone was insufficient to stave off summary judgment. The district court noted that Hicks's lack of personal experience in selling a loan contract to Goldome undercut the relevance of his testimony. In addition, because the Goldome materials referenced by Hicks were sent to him three weeks after the Castleberrys entered into their agreement with Masterbuilt, the district court found that these documents did not raise a reasonable inference that Masterbuilt had employed the practices outlined in the materials when negotiating with the Castleberrys. Moreover, the district court found that

7

neither Hicks's testimony nor any other evidence offered by the Castleberrys proved that they would have paid less if they paid for their house in cash. Furthermore, the district court found that Masterbuilt was not the agent of Goldome and that Goldome did not ratify any fraud that may have been committed by Masterbuilt. For these reasons, the district court granted summary judgment in favor of Goldome on the Castleberrys's fraud and conspiracy claims. The district court likewise granted summary judgment on the suppression and excessive finance charge claims because it found that neither Goldome nor Masterbuilt had a duty to disclose that the Castleberrys's loan contract could be sold at a discount. Accordingly, on 31 May 2001, the district court entered summary judgment in favor of Goldome against the Castleberrys on all of their claims.

On appeal, Goldome, FDIC-Corporate, and FDIC-Receiver argue that our court lacks subject matter jurisdiction because the Castleberrys failed to timely file notice of appeal.[4] For their part, the Castleberrys argue that the district court lacked subject matter jurisdiction following removal and erred by denying their motion to remand. Finally, assuming the district court had jurisdiction, the Castleberrys argue that its grant of summary judgment was improper. We will

---

[4] Goldome first made this argument in its motion to dismiss this appeal, and we ordered that their motion be carried with this appeal on the merits. See Castleberry v. Goldome Credit Corp., No. 03-11720 (11th Cir. Jan. 26, 2004). We address their jurisdictional argument and dispose of their motion in Part II.A.1. of this opinion.

address each argument in turn.

## II. DISCUSSION

A. Subject Matter Jurisdiction

Jurisdiction is a prerequisite to the legitimate exercise of judicial power. Accordingly, in every appeal, "the first and fundamental question is that of jurisdiction." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) (internal quotations and citations omitted). Thus, prior to our review of the district court's disposition of the Castleberrys's claims on the merits, we must determine as a threshold matter whether our court has jurisdiction on appeal and whether the district court had jurisdiction following removal. See Steel Co., 523 U.S. at 95, 118 S. Ct. at 1013 ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . .") (internal quotations and citations omitted).

1. Appellate Jurisdiction

Compliance with the requirements of Federal Rule of Appellate Procedure 4(a) for timely filing notice of appeal is "mandatory and jurisdictional." Coleman v. Thompson, 501 U.S. 722, 751, 111 S. Ct. 2546, 2565 (1991). An appellate court lacks jurisdiction over an appeal if a party to an otherwise appealable district court order fails to file notice of appeal within the time limits prescribed by Rule 4(a).

See Zipperer *ex rel.* Zipperer v. School Bd., 111 F.3d 847, 849 (11th Cir. 1997).

Referencing this precedent, FDIC-Corporate and FDIC-Receiver argue that we

lack jurisdiction because the Castleberrys's appeal was untimely. We disagree.

Rule 4(a) provides that, in a civil case where an agency of the United States

is a party, notice of appeal must be filed "within 60 days after the judgment or

order appealed from is entered." Fed. R. App. P. 4(a)(1)(B).[5] The time period for

filing notice of appeal, however, does not begin to run until entry of a "final

judgment." Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1277 (11th Cir. 2001) (per

curiam); Parker v. Strickland, 728 F.2d 1406, 1407 (11th Cir. 1984) (per curiam).

In a case involving multiple claims, in the absence of a Federal Rule of Civil

Procedure 54(b) certification,[6] a district court's disposition of fewer than all the

---

[5] This provision is applicable in this case because the FDIC was made a party to the Castleberrys's civil action and the FDIC qualifies as an agency of the United States. See 12 U.S.C. § 1819(b)(1) (noting that the FDIC "shall be an agency of the United States for purposes of" original federal jurisdiction); Diaz v. McAllen State Bank, 975 F.2d 1145, 1147 (5th Cir. 1992) (finding the FDIC to be an agency of the United States for purposes of establishing the applicability of the 60-day filing period prescribed in Rule 4(a)(1)(B)).

[6] Under the Federal Rules of Civil Procedure:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

claims does not constitute an appealable final judgment. See Williams v. Bishop, 732 F.2d 885, 886 (11th Cir. 1984) (per curiam) (concluding that the grant of summary judgment in favor of two of the three named defendants was not an appealable final judgment because it disposed of "fewer than all the claims or parties"). In addition, notwithstanding the entry of a final judgment or a Rule 54(b) certification, the filing period is tolled for all parties if any party files a postjudgment motion under Federal Rule of Civil Procedure 59.[7] See Fed. R. App. P. 4(a)(4)(A); Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir. 1988) (per curiam).

Based on the foregoing, we find that we have appellate jurisdiction in this case because the Castleberrys timely filed notice of appeal. The district court granted summary judgment in favor of Goldome against the Castleberrys on 31 May 2001, but did not issue a Rule 54(b) certification at that time. On 29 March 2002, the district court granted summary judgment in favor of Daiwa against the Castleberrys and Goldome. Because in this order the district court certified for appeal pursuant to Rule 54(b) the claims of the Castleberrys and the cross-claim by Daiwa against Goldome, the 60-day time period began to run. On 12 April 2002,

---

Fed. R. Civ. P. 54(b).

[7] Rule 59 provides that a party may move for a new trial or to alter or amend a judgment within ten days of the entry of a judgment. See Fed. R. Civ. P. 59.

11

however, Goldome timely filed a Rule 59 motion as to the district court's disposition of Daiwa's cross-claim. This Rule 59 motion, although limited to Daiwa's cross-claim, nonetheless tolled the 60-day filing period for all parties, including the Castleberrys. See Finch, 845 F.2d at 258 (stating that "if *any party* files a postjudgment motion under Rule 59, the filing period for *all parties* is tolled") (emphasis added); see also Richardson v. Oldham, 12 F.3d 1373, 1377-78 (5th Cir. 1994) (finding that a plaintiff's Rule 59 motion as to one defendant also tolled the time period to file notice of appeal as to the claims against two defendants not referenced in the Rule 59 motion). We thus reject the argument that Goldome's Rule 59 motion did not toll the 60-day period as to the Castleberrys's claims because the motion was limited to a cross-claim that was separate from the main action. Neither the plain language of Rule 4(a)(4) nor our precedent permits such a distinction. Moreover, Daiwa was a party to the action initiated by the Castleberrys, and its cross-claim was interrelated with that action. Cf. Scott v. Fancher, 369 F.2d 842, 844 (5th Cir. 1966) ("By definition cross-claims must be closely related to the existing action.") (internal quotations and citation omitted). As such, Goldome's Rule 59 motion was sufficient to arrest the running of the 60-day filing period for the Castleberrys, and, because the Castleberrys filed notice of appeal within 60 days of the district court's disposition of that Rule 59 motion, the

12

Castleberrys's appeal was timely.  Accordingly, we have jurisdiction.

2. District Court's Removal Jurisdiction

We review de novo whether a district court had federal subject matter jurisdiction following removal.  See Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068 (11th Cir. 2001) (per curiam).

Section 1819, 12 U.S.C., includes special provisions regarding removal and jurisdiction for civil suits in which the FDIC is a party.[8]  Specifically, § 1819 provides that the FDIC may "remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit or proceeding is filed against the [FDIC] or the [FDIC] is substituted as a party."  12 U.S.C. § 1819(b)(2)(B).  Moreover, because § 1819 provides that any civil suit in which the FDIC is a party "shall be deemed to arise under the laws of the United States," 12 U.S.C. § 1819(b)(2)(A), federal courts have subject matter jurisdiction over removed actions involving the FDIC pursuant to 28 U.S.C. § 1331 (granting original jurisdiction to federal district courts in "all civil actions arising under the Constitution, laws, or treaties of the United States").  Against this background, we proceed to analyze

---

[8] While the general removal statute, 28 U.S.C. § 1441(a), still applies when the FDIC is a party, § 1819 provides certain exceptions to § 1441(a)'s requirements.  See FDIC v. S & I 85-1, Ltd., 22 F.3d 1070, 1072 (11th Cir. 1994) (noting that the "FDIC is subject to the limits of the general removal statute, except as otherwise provided in 12 U.S.C. § 1819(b)(2)(B)").

13

each of the Castleberrys's jurisdictional arguments.

a.  Timeliness of Removal by FDIC-Corporate and FDIC-Receiver

The Castleberrys first argue that the district court lacked jurisdiction because removal was untimely.  They argue that, because Goldome Bank was declared insolvent and placed into receivership under FDIC-Receiver in May 1991, their case against Goldome, a second-tier subsidiary of Goldome Bank, was removable when filed in January 1995.  Alternatively, they cite Lazuka v. FDIC, 931 F.2d 1530, 1537 (11th Cir. 1991) and RTC v. Fragetti, 49 F.3d 715, 717 (11th Cir. 1995) for the proposition that the case was removable when Goldome referenced FDIC-Receiver in its February 1995 Answer.[9]  Under either theory, because FDIC-Corporate and FDIC-Receiver did not remove the case until December 1996, the Castleberrys argue that the district court lacked removal jurisdiction.  We disagree.

First, contrary to the Castleberrys's contentions, the action was not removable by the FDIC when it was filed.  The Castleberrys's original complaint was filed against Goldome and did not name FDIC-Receiver as a party.  Accordingly, under the plain language of the statute, the Castleberrys's complaint

---

[9] In its Answer, Goldome asserted that:
The damages claimed by plaintiff against the defendant cannot be awarded because any damages awarded would ultimately be against the liquidating assets of Goldome (Bank) (the ultimate parent of this defendant), which is being managed and administered by the Federal Deposit Insurance Corporation in its capacity as receiver for Goldome (Bank).
R1-2 at 5.

14

was not an action "filed against the [FDIC]," 12 U.S.C. § 1819(b)(2)(B), and therefore the 90-day removal period could not have begun when the case was filed. In making this determination, we decline to endorse the Castleberrys's implied assertion that FDIC-Receiver was made a party *ipso facto* because the Castleberrys filed suit against a second-tier subsidiary (Goldome) whose ultimate parent was in receivership under the management of FDIC-Receiver (Goldome Bank). Goldome and Goldome Bank are separate legal entities, and the Castleberrys presented neither evidence nor argument that their separate corporate identities should have been disregarded in this case. Accordingly, the FDIC's role in Goldome Bank's receivership cannot be attributed to Goldome for determining when the 90-day removal period began. See In re Miami Gen. Hosp., Inc., 111 B.R. 363, 367 (S.D. Fla. 1990) ("The mere fact that a parent is in receivership does not mean its subsidiary is part of that receivership.") (citing Greenbaum v. Lehrenkrauss Corp., 73 F.2d 285 (2d Cir. 1934)). In essence, then, when the complaint was filed, FDIC-Receiver had no removal right because it was not a named party and because it could not have been considered a party by attribution through its role as Goldome Bank's receiver. See FDIC v. Loyd, 955 F.2d 316, 326 (5th Cir. 1992) (construing § 1819 and stating that "no non-party to a state court proceeding has a mature right to remove that proceeding to federal court"). Thus, the 90-day

15

removal period could not have begun to accrue when the case was filed in January 1995.

Second, the Castleberrys's alternative argument—that Goldome's February 1995 answer triggered the FDIC's removal rights—is equally unavailing. Under the plain language of the statute, the 90-day removal period does not commence until an "action, suit, or proceeding" is filed against the FDIC. 12 U.S.C. § 1819(b)(2)(B). Construing this provision, we have previously found that filing a counterclaim against the FDIC was sufficient to trigger § 1819 removal rights. See FDIC v. S & I 85-1, Ltd., 22 F.3d 1070, 1074 (11th Cir. 1994). Based on this precedent, we cannot conclude that Goldome's answer—which does not contain a counterclaim, but rather references in an affirmative defense the FDIC's role as the receiver of Goldome Bank—constituted an "action, suit, or proceeding" within the meaning of § 1819. See Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002) (describing an answer as a "responsive pleading" in an action already initiated by a complaint). Moreover, Goldome's answer was insufficient to trigger the provisions of § 1819 because the answer was filed against the Castleberrys and not against any entity of the FDIC. See 12 U.S.C. § 1819(b)(2)(B) (requiring that an action be filed "against the [FDIC]" before the 90-day filing period begins to run). In this way, the Castleberrys's reliance on Lazuka and RTC is ineffectual because

16

in each of those cases the predicate act required to trigger § 1819's removal provision—the filing of an action, suit, or proceeding against the FDIC or the filing of an action against a bank and the subsequent filing in court of documentation that FDIC-Receiver was substituted as a party for that bank—had been satisfied. See Lazuka, 931 F.2d at 1532-33; RTC, 49 F.3d at 716. Here, by contrast, because Goldome was not an FDIC-insured entity that entered receivership and thereafter was replaced as a party by FDIC-Receiver, Goldome's answer is insufficient to trigger the removal provisions of § 1819. Accordingly, we cannot agree with the Castleberrys that, pursuant to Lazuka and RTC, the 90-day removal period began when Goldome filed its answer in February 1995.

Thus, we reject the Castleberrys's arguments that removal was untimely. Under the plain language of the statute, the 90-day removal period does not begin until an "action, suit, or proceeding is filed against the [FDIC] or the [FDIC] is substituted as a party." 12 U.S.C. § 1819(b)(2)(B); see Loyd, 955 F.2d at 326 (summarizing § 1819 removal by noting that "the FDIC first had to be a party before the case was removable to federal court"). The FDIC first became a party to the action in December 1996 when Daiwa initiated cross-claims against FDIC-Corporate and FDIC-Receiver. Because both entities of the FDIC removed the

17

case within 90 days of the filing of Daiwa's cross-claims, removal was timely.[10]

### b. Propriety of Daiwa's Cross-Claim

The Castleberrys's second jurisdictional argument is that Daiwa's cross-claim was not a properly filed "action, suit, or proceeding" under 12 U.S.C. § 1819(b)(2)(B) because it was filed without leave of the state court in violation of the Alabama rules of civil procedure. Specifically, the Castleberrys claim that a cross-claim cannot be considered a separate "pleading" under the Alabama rules of civil procedure, see Ala. R. Civ. P. 7(a) (failing to include a cross-claim as a separate "pleading"), and therefore a cross-claim must be made within a defendant's answer. Moreover, the Castleberrys note that parties in Alabama state court must seek the court's leave to amend a pleading within 42 days before the

---

[10] In making this determination, we decline to address the Castleberrys's other timeliness arguments which relate to their claim that FDIC-Corporate should not be allowed to exercise a separate removal right from FDIC-Receiver. In essence, the Castleberrys argue that FDIC-Receiver had an opportunity to remove the case after it was filed and that, by not removing at that time, FDIC-Receiver waived the ability of any FDIC entity to remove the action because there is only one removal right given to the FDIC. Compare Dalton v. FDIC, 987 F.2d 1216, 1222 (5th Cir. 1993) (stating that FDIC-Corporate and FDIC-Receiver do not have separate removal rights), with Bullion Servs., Inc. v. Valley State Bank, 50 F.3d 705, 709 (9th Cir. 1995) (finding that separate removal rights do exist under § 1819 for FDIC-Corporate and FDIC-Receiver). Based on Dalton's construction of the statute, the Castleberrys argue that the 1996 removals by FDIC-Corporate and FDIC-Receiver were untimely. Alternatively, the Castleberrys argue that if there are separate removal rights, FDIC-Receiver's removal at least should be deemed untimely because it failed to remove after the case was filed. However, because the predicate upon which the Castleberrys's argument rests—i.e. that FDIC-Receiver was a party to the action when the case was filed—is false, and because both FDIC entities timely removed after being joined as parties in December 1996, we need not reach the arguments raised by the Castleberrys regarding separate removal rights under § 1819.

18

first date set for trial. See Ala. R. Civ. P. 15(a). Accordingly, because Daiwa filed its initial answer in July 1995, and the case was first set for trial in October 1996, the Castleberrys claim that Daiwa's December 1996 cross-claim must be construed as a motion for leave to amend its answer. Because the state court never granted leave to amend, the Castleberrys argue that Daiwa's cross-claim was never properly "filed," and thus could not trigger § 1819 removal rights.

The Castleberrys's argument, however, ignores the fact that federal law determines whether the exercise of removal jurisdiction was proper, irrespective of state law procedural violations. See Chicago, Rock Island & Pac. R.R. Co. v. Stude, 346 U.S. 574, 580, 74 S. Ct. 290, 294 (1954) (noting that state "procedural provisions cannot control the privilege of removal granted by the federal statute"). In crafting the removal right in § 1819, "Congress used very strong language to afford the FDIC every possibility of having a federal forum," Lazuka, 931 F.2d at 1535, and state procedural law cannot be invoked to frustrate the unambiguous intent of federal legislation, see U.S. CONST. art. VI, cl. 2. Consistent with this construction, in Farina v. Mission Investment Trust, our predecessor court declined to adopt the argument that the FDIC lacked the power to remove an action under § 1819 because it was not made a party according to state law procedure when the case was initially filed. See 615 F.2d 1068, 1074-1075 (5th Cir. 1980). Rather, the

19

court determined the FDIC's status as a party by interpreting Fed. R. Civ. P. 21 and Fed. R. Civ. P. 24(c). See id. Accordingly, we must look to the Federal Rules of Civil Procedure to determine whether Daiwa "filed" an action against the FDIC under § 1819. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70, 415 U.S. 423, 438, 94 S. Ct. 1113, 1123 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."); Fed. R. Civ. P. 81(c).

Federal Rule of Civil Procedure 5(e) defines when a pleading is considered "filed" in a federal district court.[11] Construing the Rule, we have found that "pleadings should be deemed filed [when] submitted to the clerk." Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1064 (11th Cir. 2004), cert. denied 125 S. Ct. 963 (2005); see Leggett v. Strickland, 640 F.2d 774, 776 (5th Cir. 1981) (finding that a complaint was not "filed" until it was in "actual or constructive possession of the clerk"). In addition, Rule 5(e) provides that "[t]he clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by" federal or local rules. Fed. R. Civ. P.

---

[11] Contrary to Alabama law, a cross-claim under the federal rules is considered a separate pleading which can be made outside of the context of a responsive pleading. See Fed. R. Civ. P. 8(a). As such, under the federal rules, Daiwa did not need to obtain leave to file the cross-claim. Accordingly, we analyze when the claim was "filed" under Rule 5(e) rather than under Rule 15(a), which requires leave to file amended pleadings after an answer has been served.

20

5(e).  Accordingly, the federal rules establish that a cross-claim is "filed" upon the completion of the act of delivering it to clerk, irrespective of any procedural flaws in the pleading itself.

Based on this standard, Daiwa's cross-claim was "filed" according to federal law because it was delivered to the clerk of the Alabama state court.  Whether this filing was proper under Alabama law is immaterial because federal law controls, and the cross-claim was "filed" as defined by Rule 5(e).  In addition, the language of 5(e), which precludes a clerk from refusing to accept a filing for deficiencies in its form, underscores that we need not inquire into the procedural propriety of the cross-claim to determine whether it was filed.  See McClellon v. Lone Star Gas Co., 66 F.3d 98, 102 (5th Cir. 1995) (refusing to consider procedural propriety of a complaint to determine when it was filed because Rule 5(e) gives the clerk no discretion to refuse to accept a submitted pleading).  Moreover, we note that the plain language of § 1819 requires that the action be "filed"; it does not require that an action be *properly* filed.  See Adams v. Walker, 767 F. Supp. 1099, 1102 (D. Kan. 1991) ("[§ 1819] does not suggest in any meaningful way that removal jurisdiction is limited to those instances where the FDIC has been *properly* named a party in the state court action.") (emphasis in original).  Accordingly, because it met the requirements in the federal rules, Daiwa's cross-claim was "filed," and

21

therefore the FDIC's removal rights under § 1819 were triggered.

c. The State Law Exception in 12 U.S.C. § 1819(b)(2)(D)

The Castleberrys's third jurisdictional argument is that the exception in § 1819(b)(2)(D) divested the district court of subject matter jurisdiction. Under the statute, a federal court lacks jurisdiction in any action:

> (i) to which the [FDIC], in the [FDIC]'s capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
> (iii) in which only the interpretation of the law of such State is necessary . . . .

12 U.S.C. § 1819(b)(2)(D)(i-iii). Under the language of the statute, each of these three prongs must be established by a party to defeat removal. See Lazuka, 931 F.2d at 1538 (noting that the "burden" on the three criteria in § 1819(b)(2)(D) shifts to the party objecting to removal after the prerequisites for removal under § 1819(b)(2)(B) are met).

Applying the factors in § 1819(b)(2)(D), we find that the state law exception did not withdraw subject matter jurisdiction from the district court because the second prong cannot be met on the facts of this case. The second prong requires that the claims involve only either: (1) "preclosing rights" against the FDIC-insured bank; or (2) "obligations" owed by the FDIC-insured bank to "depositors,

22

creditors, or stockholders." The claims of the Castleberrys and Daiwa involve neither of these. First, the basis for Daiwa's cross-claims is the right to indemnification found in the contracts it signed with FDIC-Receiver in 1993 when it purchased the portfolio containing the Castleberrys's loan. Because Daiwa's cross-claim involves a right which accrued more than two years after Goldome Bank entered receivership, the case does not involve only preclosing rights. Moreover, even though the Castleberrys's claims accrued before Goldome Bank went into receivership, these preclosing claims were filed against Goldome and not Goldome Bank, the FDIC-insured State bank. Accordingly, the action does not contain only claims that both (1) involved preclosing rights and (2) were filed against an FDIC-insured State bank, as required to satisfy the second prong. Second, the Castleberrys have not demonstrated that any of the claims in the case involved "obligations" owed by Goldome Bank to depositors, creditors, or stockholders. Accordingly, the Castleberrys have failed to meet their burden as to the second prong. Because application of the state law exception hinges on the satisfaction of all three prongs in § 1819(b)(2)(D), this failure is fatal to the Castleberrys's claim that the exception applied. See Motorcity of Jacksonville, Ltd. v. Southeast Bank, N.A., 83 F.3d 1317, 1323 n.3 (11th Cir. 1996) (en banc) (finding that the state law exception was inapplicable because not all of the three of

23

prongs were satisfied), vacated on other grounds by Hess v. FDIC, 519 U.S. 1087, 117 S. Ct. 760 (1997). Thus, the district court was not divested of jurisdiction by the state law exception in § 1819(b)(2)(D).

In sum, despite the contentions of the parties to the contrary, our court has jurisdiction on appeal, and the district court had federal subject matter jurisdiction following removal. Accordingly, we turn now to the merits of the district court's grants of summary judgment in favor of Goldome and Daiwa.

B. Grant of Summary Judgment

We review the district court's grant of summary judgment de novo and view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276-77 (11th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotations and citations omitted).  Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an "an essential element of her case with respect to which she has the burden of proof."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2252.  Based on this standard, the Castleberrys argue that the district court improperly granted summary judgment on their fraudulent misrepresentation and suppression claims.[12]

1.  Fraudulent Misrepresentation

Under Alabama law, to recover on a claim of fraudulent misrepresentation, a plaintiff must establish four elements: (1) a false representation (2) concerning a material existing fact (3) that is justifiably relied upon by the plaintiff (4) who was damaged as a proximate result.  See Ex parte Ford Motor Credit Co., 717 So. 2d 781, 788 (Ala. 1997); see also ALA. CODE § 6-5-101.  In analyzing the "false representation" element, the district court found that the "crux of the Castleberrys' claim . . . is that Masterbuilt inflated the cash price of their house to cover the discount at which Goldome had previously agreed to purchase the Castleberrys'

_____

[12] We note that the Castleberrys do not present any argument that the district erred in granting summary judgment on their claims of conspiracy or the charging of excessive rates under Alabama law.  As such, we decline to review the district court's disposition of these claims and limit our review to the arguments raised in the briefs.  See Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1212 (11th Cir. 1999) (declining to review issues decided by the district court which were not argued in appellate briefs).

25

sales contract and thereby imposed a hidden finance charge upon them." R9-243 at 7. To prevail on this particular theory of misrepresentation, the Castleberrys had to prove that similar price increases and hidden finance charges were not assessed for cash-paying customers. See Hoffman v. Grossinger Motor Corp., 218 F.3d 680, 682 (7th Cir. 2000) (construing misrepresentation claim under federal truth-in-lending laws by noting that the plaintiff must "present evidence that this dealer really did include a secret finance charge in the sales price to its credit customers . . . but not in the price to its other customers"); Gibson v. Bob Watson Chevrolet-GEO, Inc., 112 F.3d 283, 287 (7th Cir. 1997) (same). In addition, we note that the Castleberrys's complaint was filed against Goldome on the theory that Masterbuilt acted as Goldome's agent in making fraudulent misrepresentations regarding the true cash price of the Castleberrys's house. Accordingly, in addition to the prima facie elements of fraudulent misrepresentation, the Castleberrys also had the burden to show that Masterbuilt was Goldome's agent. See Mardis v. Ford Motor Credit Co., 642 So. 2d 701, 704 (Ala. 1994) (discussing the showing of agency required to defeat summary judgment motion on a claim that retailer acted as an agent of a financing company).

Based on these standards, it is apparent that summary judgment was properly granted because the Castleberrys failed to establish an agency relationship

between Masterbuilt and Goldome. Under Alabama law, "for an agency relationship to exist, there must be a right of control by the principal over the agent." Id. at 705 (quoting Butler v. Aetna Fin. Co., 587 So. 2d 308, 310 (Ala. 1991)). Here, however, Goldome did not exert any control over Masterbuilt. As Masterbuilt's contract with the Castleberrys demonstrated, Masterbuilt was free to sell its loans to any financing company it chose. Moreover, because there was no contractual relationship between Masterbuilt and Goldome prior to an assignment of a loan, Goldome had no recourse to dictate how Masterbuilt set its prices or negotiated loan contracts with customers. This lack of control defeats the Castleberrys's claim that Masterbuilt acted as Goldome's agent. See Mardis, 642 So. 2d at 705 (finding agency relationship did not exist where the purported principal "exercised no influence over . . . negotiations with . . . customers and had no authority over how [the purported agent] should conduct its business"). Moreover, contrary to the claims of the Castleberrys, the fact that Goldome furnished Masterbuilt with certain forms and routinely purchased some of its loan contracts did not establish a principal-agent relationship. See Luck v. Primus Auto. Fin. Servs., 763 So. 2d 243, 246 (Ala. 2000); Battles v. Ford Motor Credit Co., 597 So. 2d 688, 691 (Ala. 1992). Accordingly, the Castleberrys failed to create a genuine issue of fact as to whether an agency relationship existed between

27

Masterbuilt and Goldome, and therefore the grant of summary judgment on the fraudulent misrepresentation claim was proper. See Kennedy v. Western Sizzlin Corp., 857 So. 2d 71, 77-78 (Ala. 2003) (finding summary judgment was appropriately granted where plaintiffs failed to create a genuine issue of fact as to existence of agency relationship); see also Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2252 (noting that the grant of summary judgment is proper when the plaintiff failed to present sufficient evidence on a required element).

    2. Suppression

    Alabama law provides that, to prevail on a claim of fraudulent suppression, a plaintiff must show: "(1) the suppression of a material fact (2) that the defendant has a duty to communicate (3) because of a confidential relationship between the parties or because of the circumstances of the case and (4) injury resulting as a proximate consequence of the suppression." Ex parte Dial Kennels, Inc., 771 So. 2d 419, 421 (Ala. 1999) (per curiam); see also ALA. CODE § 6-5-102. Construing the "duty" element in the prima facie case for suppression, Alabama courts have stated that a "duty on the part of one to disclose a material fact to another may be based on either a statute or the common law." Ex parte Ford Motor Credit Co., 717 So. 2d at 786. Because neither the Alabama Code nor the federal Truth-in-Lending Act impose any duty on the part of a creditor to disclose any agreement to assign a

28

consumer credit transaction, see id., the Castleberrys had to establish that Goldome and Masterbuilt had a common law duty to disclose that Masterbuilt might assign the Castleberrys's loan contract to Goldome at a discounted rate. To determine whether a common duty to disclose exists, Alabama courts evaluate, inter alia, the relationship of the parties; the relative knowledge of the parties; the plaintiff's opportunity to ascertain the undisclosed fact; and other relevant circumstances. See State Farm Fire & Cas. Co. v. Owen, 729 So. 2d 834, 842-43 (Ala. 1998).

Based on these factors, neither Goldome nor Masterbuilt had a duty to disclose to the Castleberrys information related to the assignment of their loan contract. The district court found, and we agree, that a debtor-creditor relationship existed between the Castleberrys and Masterbuilt and between the Castleberrys and Goldome. This kind of relationship does not trigger a duty to disclose, absent a special confidential relationship. See Ex Parte Ford Motor Credit Co., 717 So. 2d at 786-87. Because the Castleberrys have not alleged that a special confidential relationship existed, the fact that they maintained a debtor-creditor relationship with Masterbuilt and Goldome militates against a finding that there was a duty to disclose. See id. Moreover, while the Castleberrys correctly noted in the district court that their inquiry of Masterbuilt as to particular financing terms may impose a duty on Masterbuilt to disclose certain facts, see id. at 787, this duty was limited

29

to disclosing facts known to Masterbuilt at the time of execution. At the time the contract was executed, however, as the terms of the loan agreement indicated, Masterbuilt was free to assign the loan contract to any financial institution it chose; it did not have a preexisting exclusive contract to assign loan contracts to Goldome. Accordingly, the Castleberrys's pre-execution inquiry could not trigger liability for events related to Masterbuilt's post-execution assignment of its loan contract because Masterbuilt had not arranged to assign the loan to Goldome at that point and Alabama law did not require that they disclose the terms under which Masterbuilt would have considered subsequent assignment to a financial institution. See State Farm Fire & Cas. Co., 729 So. 2d at 843 (noting that a creditor need not disclose its "internal procedures" and typical "business practices" to a debtor ). In addition, we cannot conclude that the Castleberrys lacked an opportunity to ascertain certain facts. The terms of the contract indicated that if Masterbuilt chose to assign its interest in the Castleberrys's loan, it may assign it to Goldome and listed Goldome's address. As such, the terms of the contract were sufficient to give the Castleberrys an opportunity to inquire about any dealings or conditional understandings between Masterbuilt and Goldome. See id. (finding that contractual language sufficiently provided plaintiff with an opportunity to ascertain certain facts). Accordingly, based on the circumstances alleged in this

30

case, there was no duty on the part of either Masterbuilt or Goldome to disclose to the Castleberrys that their loan may be assigned at a discount and therefore the district court properly granted summary judgment on the Castleberrys's suppression claim.

In sum, summary judgment was properly granted in favor of Goldome on the Castleberrys's fraud and suppression claims. Moreover, because any liability on the part of Daiwa was derivative of the Castleberrys's claims against Goldome, the district court properly granted summary judgment to Daiwa.

### III. CONCLUSION

As we have explained, the terms of 12 U.S.C. § 1819 evince a clear congressional intent to provide a federal forum when the FDIC is made a party to state court litigation. See Lazuka, 931 F.2d at 1535. Based on a straightforward application of § 1819 to the facts of this case, we conclude that Daiwa's assertion of a cross-claim against FDIC-Corporate and FDIC-Receiver triggered § 1819 removal rights, which were timely exercised by the FDIC entities. Accordingly, contrary to the Castleberrys's contentions, the district court properly exercised jurisdiction over their claims on removal. Moreover, based on our review of the district court's application of Alabama law to the Castleberrys's claims, summary judgment was properly granted in favor of Goldome and Daiwa. Accordingly, the

31

district court's disposition of the Castleberrys's claims is **AFFIRMED.**