[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14820

_____

D.C. Docket No. 1:17-cv-24453-KMM


ABBEY L. KAPLAN,
STEVE SILVERMAN,
KLUGER, KAPLAN, SILVERMAN KATZEN & LEVINE, PL,

                                          Plaintiffs - Appellants,

versus

NAUTILUS INSURANCE COMPANY,

                                          Defendant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 28, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

Plaintiff-Appellants, individuals Abbey Kaplan and Steve Silverman, and law firm Kluger, Kaplan, Silverman, Katzen & Levine, PL (collectively, Appellants), appeal the district court's grant of summary judgment in favor of Defendant-Appellee Nautilus Insurance Company (Nautilus). After a review of the record, and with the benefit of oral argument, we affirm the district court's order.

## I.

This is a statutory bad-faith insurance case that involves multiple underlying disputes. The first relevant dispute involved Edward Okun and individual Defendants Kaplan and Silverman (the Okun Dispute). Kaplan and Silverman are lawyers who used to be members of the law firm Kluger, Peretz, Kaplan, and Berlin (KPKB). KPKB represented Okun and his affiliated entities (Okun Entities) from November 2006 to October 2007. Subsequently, Okun Entities filed for bankruptcy and the trustee claimed that KPKB and its attorneys, including Kaplan and Silverman, engaged in malpractice and breached a fiduciary duty in connection with their representation of Okun and Okun Entities. The parties eventually settled this dispute.

After the Okun Dispute, Kaplan and Silverman left KPKB and formed Klugar, Kaplan, Silverman, Katzen, & Levine, PL (KKSKL). In March of 2011, KKSKL obtained professional liability insurance from Nautilus. Later that same year, Cordell Consultant, Inc., Money Purchase Plan and Trust (Cordell) sued

Kaplan, Silverman, and KPKB, seeking over $14 million (the Cordell Action). Cordell claimed that Kaplan, Silverman, and KPKB helped Okun perpetuate a Ponzi scheme that ultimately injured Cordell.

Appellants asked Nautilus to defend the claims against them in the Cordell Action or otherwise provide indemnification pursuant to the professional liability insurance policy. Nautilus refused. Nautilus claimed that the Cordell Action did not fall under the policy because the events underlying that action occurred before Nautilus insured KKSKL. Kaplan and Silverman personally funded their defense, hiring outside counsel. Attorneys at KKSKL also assisted Kaplan and Silverman. And KKSKL prepared its own defense because Cordell moved to include it as a party to the suit. However, the district court denied Cordell's motion and KKSKL was never named as a party to the Cordell Action. Eventually, the district court ruled in favor of Kaplan and Silverman, and we affirmed.

In the next related dispute, Appellants filed a breach-of-contract claim against Nautilus before the American Arbitration Association (the Underlying Arbitration). In part, Appellants sought to be compensated for: attorneys' fees and costs incurred by Kaplan and Silverman in the Cordell Action ($2,150,752.56); KKSKL's billed fees incurred in preparing a defense for Kaplan and Silverman in the Cordell Action ($475,429.35), and KKSKL's time incurred in preparing its own defense in the Cordell Action ($134,355.00).

The arbitration panel ruled in favor of Appellants. It used the lodestar method to calculate attorneys' fees, however, and awarded Appellants less than what they asked for: the panel awarded Kaplan and Silverman $1,467,354.28 and KKSKL $104,504.00. Appellants also recovered damages for arbitration fees, other attorneys' fees, and pre- and post-judgment interest.

After Appellants received the arbitration award, they filed this suit claiming that Nautilus acted in bad faith under Florida Statute § 624.155 in refusing to defend them in the Cordell Action.[1] Appellants sought unrecovered fees and costs that Kaplan and Silverman incurred in defending the Cordell Action, lost return on investment for amounts that Kaplan and Silverman spent on their defense and could have successfully invested elsewhere, and lost profits that KKSKL sustained because of the Cordell Action and the Underlying Arbitration. Nautilus moved to dismiss, contending that Appellants' claims were barred by res judicata and collateral estoppel. The district court denied Nautilus's motion, finding that Appellants pleaded sufficient facts to state a claim.

After discovery, Nautilus filed a motion for summary judgment, again arguing that res judicata and collateral estoppel barred the suit. Nautilus also claimed that Appellants could not recover lost return on investment or lost profit

---

[1] Originally Appellants brought this claim in state court, but Nautilus removed the suit to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1332(a)(1), on the basis of diversity jurisdiction.

4

damages.  The district court granted Nautilus's motion.  It rejected Nautilus's argument that res judicata applied but agreed that collateral estoppel barred Appellants' claim for the unrecovered damages that they previously sought in the Underlying Arbitration.  While the district court found that Appellants' claims for lost profits and lost return on investment were not barred by collateral estoppel, it concluded that they nevertheless failed because Appellants did not provide sufficient evidence that Nautilus's bad faith caused the alleged damages. Appellants appealed.

Appellants contend that the district court erred in granting Nautilus summary judgment because (1) Appellants' claims for unrecovered fees related to the Cordell Action are not barred by collateral estoppel; and (2) Appellants provided sufficient evidence that they suffered lost profits to survive summary judgment.

## II.

We review a district court's grant of summary judgment de novo, viewing all evidence and factual inferences reasonably drawn therefrom in the light most favorable to the nonmoving party.  *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005).  "[S]ummary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. Pro. 56(c)). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

## III.

First, we address Appellants' argument that their claim for unrecovered fees and costs that Kaplan and Silverman incurred in defending the Cordell Action is not barred by collateral estoppel.

## A.

In Florida, the doctrine of collateral estoppel "prevents identical parties from relitigating the same issues that have already been decided." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995). For collateral estoppel to apply "the parties and issues [must] be identical, and . . . the particular matter [must have been] fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.* This includes issues litigated and decided during a prior arbitration proceeding. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006). The rationale is that courts should not, "absent some legal infirmity in the first trial," give a party "multiple bites at the same apple" after that party fully participated in a suit and had the opportunity to challenge and argue an issue. *Fridman v. Safeco Ins. Co.*, 185 So. 3d 1214, 1225 (Fla. 2016).

Under Florida Statute § 624.155, an insured party may bring a first-party bad-faith claim against their insurer if the insurer did not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(b)(1). The insured can recover "those damages which are a reasonably foreseeable result of a specified violation of [the] section." *Id.* § 624.155(8).

There must be a determination of underlying liability before a party can bring a first-party bad-faith claim under § 624.155. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith . . . can accrue."). Due to the interrelated nature of these claims, parties sometimes argue that collateral estoppel bars the subsequent bad-faith claim.

**B.**

Appellants argue that collateral estoppel does not apply here. They contend that the district court erred in holding that collateral estoppel barred Kaplan and Silverman's claim for fees and costs because they did not, and under § 624.155 could not, litigate the issue of Nautilus's bad faith during the Underlying Arbitration. That is, according to Appellants, they could not bring this claim until

7

after the arbitration panel found that Nautilus was liable under the insurance policy. *Blanchard*, 575 So. 2d at 1291; *see also Dadeland*, 945 So. 2d at 1235. Appellants point to other district court decisions that have employed this rationale to find that collateral estoppel does not bar subsequent bad-faith actions under § 624.155. *See, e.g.*, *Diagnostic Leasing Inc. v. Associated Indem. Corp.*, No. 8:16-cv-958-T-36TGW, 2017 WL 3669491, at *6 (M.D. Fla. Apr. 12, 2017); *Royal Marco Point I Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 3:07-cv-16, 2010 WL 2757240, at *4 (M.D. Fla. July 13, 2010); *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*, No. 8:14-cv-3139-T-23MAP, 2018 WL 2288288, at *5 (M.D. Fla. May 18, 2018).

Appellants also claim that the cases the district court relied on to find collateral estoppel are inapposite because those cases involved plaintiffs who were trying to relitigate contractual claims. Appellants say this case is different—they are not relitigating their breach of contract claim and Nautilus's underlying liability. Instead, they are alleging an extra-contractual claim: that they are owed damages under § 624.155 because of Nautilus's bad faith.

Last, Appellants claim that Nautilus should not have been granted summary judgment because the fees they sought were reasonably foreseeable. They say that it is foreseeable that lawyers faced with a suit threatening their careers, like the

8

Cordell Action, would hire counsel that charges rates higher than those anticipated by the lodestar method.

The resolution of this issue turns on one question: Is the Appellants' claim contractual or extra-contractual?  Because we find that Appellants' claim is contractual, we agree with the district court that it is barred by collateral estoppel.[2]

Appellants are right that they could not bring a claim under § 624.155 until after the panel found Nautilus liable in the Underlying Arbitration.  *See Blanchard*, 575 So. 2d at 1291.  Appellants fail, however, to persuade us that their bad-faith claim differs from their claim for costs and fees in the Underlying Arbitration.  They assert that this claim is different because the theory of liability—bad faith— differs from a breach-of-contract theory.  This characterization is merely semantic and does not change the fact that in the present action Appellants are asking for the exact same fees that they requested but did not recover in the Underlying Arbitration.  It would violate the principles of collateral estoppel to allow

---

[2] All of Appellants' arguments addressing this issue start with the incorrect assumption that their claims are extra-contractual.  Therefore, the cases they cite for support are not applicable or persuasive here because those cases involve extra-contractual claims.  *See Diagnostic Leasing Inc.*, 2017 WL 3669491, at *6 (finding a bad-faith claim was not barred by collateral estoppel when it involved claims of misrepresentation and bad faith that were not at issue in the underlying case and the defendant was not a party to the underlying case until post-trial); *Royal Marco*, 2010 WL 2757240, at *4 ("Because [plaintiff] seeks recovery at present for damages allegedly caused by [defendant's] bad faith, and not breach of contract, its claims are not barred by res judicata or collateral estoppel."); *MI Windows & Doors*, 2018 WL 2288288 at *5 (finding that a bad-faith claim was not barred by collateral estoppel because it raised separate issues concerning "essential elements in determining whether [defendant] acted in good faith").  Also, these cases are not binding on us, as they are all unpublished district court decisions.

Appellants to relitigate this issue simply because they recharacterized their claim as one of bad faith rather than breach of contract.[3] *See Fridman*, 185 So. 3d at 1225 ("If the amount of the [underlying] verdict is not binding as an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple."); *GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 807 (Fla. Dist. Ct. App. 2014) ("Forcing retrial of a plaintiff's damages at a first party bad faith trial, as [defendant] urges, is such bad policy that we do not glean even a hint of its existence in any case the [Florida] Supreme Court has decided in this area.").[4]

Accordingly, we affirm the district court as to this issue.

---

[3] Because we find that Appellants' claim is barred by collateral estoppel, we need not consider whether it was reasonably foreseeable under § 624.155.

[4] *Dadeland Depot, Inc. v. St. Paul Fire & Marine Insurance Co.* is also instructive here. 945 So. 2d 1216. There, the Florida Supreme Court agreed that in entertaining a § 624.155 bad-faith action a court "should not . . . reconsider[] [ ] defenses that were already litigated and rejected during [a] previous arbitration proceeding." *Id.* at 1236. The opinion clarified that in a § 624.155 bad-faith action, a party—there, the defendant—is collaterally estopped from bringing the same affirmative defenses that were already rejected in a previous proceeding. *Id.* The court explained, however, that the defendant "should not be denied the opportunity to present the factual bases for those affirmative defenses as support for its present defense that it reasonably and in good faith believed that the previously rejected affirmative defenses were valid and that it was therefore not acting in bad faith" in refusing to defend the plaintiff in the underlying action. *Id.* This case is different, however, as the Appellants are not presenting facts related to the Underlying Arbitration that demonstrate Nautilus's bad faith; they are merely reasserting a claim for damages that they brought but did not fully recover in the Underlying Arbitration.

### IV.

Next, we address Appellants' argument that the district court erred in granting Nautilus summary judgment as to Kaplan and Silverman's claims for lost return on investment and KKSKL's claim for lost profits. Each of Appellants' claims here can be analyzed as claims for lost profits. *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir. 1990) (finding that a plaintiff's claim for "anticipated profits based [ ] on his claim that he would have sold [ ] securities at the optimal time" was "essentially a claim for lost profits").

### A.

A party seeking to recover lost prospective profits bears the burden of proving "the fact of damages and the extent of damages" with reasonable certainty. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1214 (11th Cir. 2006). A party establishes "the fact of damages" by proving that "the defendant's action caused the damages." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). To this end, a party cannot establish causation by solely relying on speculative testimony. *See Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937, 938 (Fla. Dist. Ct. App. 1987) ("In Florida, unless the fact-finder is presented with evidence which will enable it to determine damages for lost profits with a reasonable degree of certainty, rather than by means of speculation and conjecture, the claimant may not recover such damages."); *see also*

11

*Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 922–23 (11th Cir. 1987) ("While the existence of a programmed investment plan which incorporates a predetermined response to market conditions might enable a court to calculate lost profits with some certainty, it can only do so with some proof that the investor would in fact follow the investment plan."). Once causation is established, the party must prove "the extent of damages" by showing "there is some standard by which the amount of damages may be adequately determined." *See Nebula Glass*, 454 F.3d at 1212 (explaining that in a lost-profits case courts must analyze the fact of damages before it considers the extent of damages); *Messer* 833 F.2d at 923 (11th Cir. 1987) ("Unless a plaintiff can show with reasonable certainty that the defendant's wrongful conduct proximately *caused* damages, questions of measurement never arise.").

## B.

Appellants argue that the district court employed the incorrect causation standard in granting Nautilus summary judgment. They claim that § 624.155 sets out a standard of "reasonable foreseeability," but the district court used a "reasonable degree of certainty" standard.

Appellants also claim that the district court did not comply with the summary judgment standard because it improperly weighed the evidence and did not consider the facts in the light most favorable to Appellants. To this end,

12

Appellants assert that the cases the district court relied on were inapplicable. Specifically, they argue that their claims for lost profits are stronger than the claims accepted in *Nebula Glass International, Inc. v. Reichhold, Inc.* or *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.* Appellants also state that *Messer v. E.F. Hutton & Co.* and *In re Sherwood Investments Overseas Ltd., Inc.*, No. 6:10-bk-584-KSJ, 2015 WL 4486470, at *29 (Bankr. M.D. Fla. July 22, 2015), are not analogous to this case because the plaintiffs in those cases did not provide sufficient evidence that they had a history of investing.[5]

As an initial matter, Appellants' argument that the district court applied the wrong causation standard misconstrues the law. Section 624.155 does impose a "reasonably foreseeable" causation standard, but this relates to the types of damages a party may be able to obtain in a bad-faith action. The underlying claim for damages still must be established; the statute's causation standard does not change the elements required to prove lost profits. As we have explained, to prove a claim for lost profits, a party must show with *reasonable certainty* that "1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined." *W.W. Gay*, 545 So. 2d at

---

[5] Appellants also argue that *Messer* and *Himes v. Brown Co. Securities Corp.,* are not applicable because those cases were decided after trial rather than at summary judgment. While we recognize that the procedural posture of those cases differs from this case, we find that *Messer* and *Himes* are still instructive here as they involve plaintiffs demonstrating causation for lost-profits claims.

13

1351. Therefore, the district court was correct to employ a "reasonable degree of certainty" standard in evaluating Appellants' claims for lost profits.

Second, the district court properly applied the summary judgement standard. The district court considered the facts in the light most favorable to Appellants, but nonetheless recognized that Appellants did not submit evidence that could lead a jury to properly find that Nautilus caused Appellants' lost profits. The district court found the evidence provided was insufficient because it was speculative. We agree and address Appellants' specific claims for lost profits below.

Kaplan and Silverman did not demonstrate that Nautilus caused them lost profits. They provided historical information indicating how they invested during the Cordell Action and testified they would have invested more money if they had not been personally funding that suit. However, they did not provide evidence, besides their own testimony, to show that they would have in fact invested this money. Importantly, Kaplan and Silverman failed to submit an investment plan or other similar evidence, which could have shown how they invested in the past and how they planned to invest in the future. *See Messer*, 833 F.2d at 922–23; *Himes*, 518 So. 2d at 938–39 (finding plaintiff could not a sustain claim for lost return on investment because he did not "prove that he would have completed the time-sensitive transactions at precisely the correct time"). Because "damages may not be awarded for lost profits when those profits are dependent on a party taking an

14

action that it is unclear he would have taken," we find that the district court was correct in holding that Kaplan and Silverman's claims for lost profits were speculative and unsupported. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177 (11th Cir. 2002).

We find that KKSKL is not entitled to lost profits for the same reason—it did not show "the fact of damages." *Nebula Glass*, 454 F.3d at 1214. Appellants submitted evidence of KKSKL's historical realization rates but did not show that it sustained damages during the time of the Cordell Action. Appellants' corporate representative testified that KKSKL attorneys that worked on the Cordell Action would have billed work on other matters had the firm not been involved. Appellants provided no other evidence to support this testimony or to otherwise demonstrate that Nautilus's bad faith caused it lost profits. In fact, the corporate representative also testified that KKSKL did not lose clients, turn away new clients, miss deadlines in other matters, or transfer cases to other law firms as a result of its involvement in the Cordell Action. Considering the speculative nature of the testimony and the fact that KKSKL does not present any other support for its claim that Nautilus caused it lost profits, we agree with the district court that KKSKL did not demonstrate causation.

Last, the cases the district court relied on further convince us that it correctly granted Nautilus summary judgment. Contrary to Appellants' argument, the

15

plaintiffs in *Nebula Glass* and *W.W. Gay* had much stronger claims for lost profits than what was presented here. In *Nebula Glass*, the plaintiffs admitted evidence that the defendant's bad faith led specific customers to stop buying their products, an executive of the company testified that it hurt the company's reputation, and an expert submitted data showing that the company's profits had decreased. 454 F.3d at 1212. And in *W.W. Gay*, the plaintiff demonstrated lost profits by submitting studies and testimony by economic experts. 545 So. 2d at 1351. Here, on the other hand, Appellants rely exclusively on speculative testimony that Kaplan and Silverman would have invested in certain ways had they not had to personally fund their defenses and that KKSKL would have been more profitable had it not helped with the Cordell Action.[6] These sorts of unsupported allegations do not compare to the claims in *W.W. Gay* or *Nebula Glass*, where the parties provided more concrete evidence of causation. Thus, the district court correctly granted Nautilus summary judgment as to Appellants' claims for lost profits.

---

[6] It is even more clear that the individual Defendant's claims are weaker than those alleged in *Nebula Glass* or *W.W. Gay* because the claims for lost profits in those cases did not depend on an individual taking a specific action in the future. Here, Kaplan and Silverman's claims *do* depend on the factfinder assuming (without other evidence) that Kaplan and Silverman would have invested in certain companies at certain times were they not personally funding their defenses. This makes Kaplan and Silverman's claims more like the claims in *Messer* and *Sherwood*, where the plaintiffs were barred from receiving lost profits because their claims were speculative. *See Messer*, 833 F.2d at 922–23 (finding that the plaintiff who submitted investment plan still could not succeed on his claim for lost profits because he did not demonstrate that he would have "in fact follow[ed] the investment plan."); *Sherwood*, 2011 WL 4486470, at *29–30 (finding a party could not sustain a claim for lost profits and therefore could not survive summary judgment when he only presented evidence that relied on "self-serving, after-the-fact statements on how [he] would have invested").

## V.

Because Appellants assert the same claim for damages that they already litigated in the Underlying Arbitration, we affirm the district court's holding that Appellants' claim is barred by the doctrine of collateral estoppel. Similarly, we agree with the district court that the Appellants assert only speculative claims for lost profits. Therefore, we affirm the district court's grant of summary judgment in favor of Nautilus.

**AFFIRMED.**